[No. A128091. First Dist., Div. Five. Sept. 12, 2011.]

APPLE, INC., Plaintiff and Appellant, v.
FRANCHISE TAX BOARD, Defendant and Appellant.

[No. A129090. First Dist., Div. Five. Sept. 12, 2011.]

APPLE, INC., Plaintiff and Appellant, v.
FRANCHISE TAX BOARD, Defendant and Respondent.

2

[Page content redacted]

## Counsel

Pillsbury Winthrop Shaw Pittman, Jeffrey M. Vesely, Kerne H. O. Matsubara and Annie H. Huang for Plaintiff and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Paul D. Gifford, Assistant Attorney General, Joyce E. Hee and Kristian D. Whitten, Deputy Attorneys General, for Defendant and Appellant and for Defendant and Respondent.

## Opinion

**BRUINIERS, J.**—Apple, Inc. (Apple), is one of the world's largest multinational corporations.[1] It is incorporated in California and has its principal place of business in this state, but operates worldwide as the parent of a number of wholly owned foreign subsidiary corporations. Apple and its subsidiaries design, manufacture, and market personal computers, portable digital music players, and mobile communication devices and sell a variety of related software, services, peripherals, and networking solutions.

At issue in this tax refund action is the California tax treatment of repatriated dividends paid to Apple from certain of its subsidiaries in its 1989 tax year. More specifically, the issue is the appropriate method to account for the source from which repatriated dividends are paid, and which of two competing methods is more consistent with the provisions of our tax code that seek to ensure that foreign subsidiary income is appropriately taxed—but

[1] See Dullforce, *FT Global 500* (June 24, 2011) Financial Times <http://www.ft.com/intl/cms/s/2/1516dd24-9d3a-11e0-997d-00144feabdc0.html#axzz1UfTtHutq> (as of Sept. 12, 2011).

only once. Also in dispute is an interest deduction taken by Apple in its 1989 tax year, but disallowed by California's Franchise Tax Board (FTB).

Apple argued that FTB improperly subjected it to double taxation when it applied a last-in-first-out (LIFO) proration of its income, treating the dividends as paid first from the current year's earnings, and only then from the most recent prior years' earnings on a year-by-year basis. Apple contends that Revenue and Taxation Code section 25106,[2] as interpreted by this district in *Fujitsu IT Holdings, Inc. v. Franchise Tax Bd.* (2004) 120 Cal.App.4th 459 [15 Cal.Rptr.3d 473] (*Fujitsu*), requires that such dividends instead be subject to "preferential ordering" and be deemed to be paid first out of income already taxed in prior years, and thus eliminated entirely from the recipient's income subject to California tax. Apple also argued that FTB improperly disallowed an interest expense deduction on its domestic borrowing, which FTB allocated in part to nontaxable dividends repatriated in the 1989 tax year.

Following a nonjury trial, presented largely on stipulated facts, the trial court ruled against Apple on the dividend ordering issue, but in Apple's favor on the disputed interest deduction. As a result, it ordered that a refund be paid to Apple in the amount of $920,482.80 plus interest—the full amount sought by Apple in its complaint. Apple subsequently moved for an award of its attorney fees under section 19717, subdivision (a)[3] and Code of Civil Procedure section 1021.5.[4] The court denied the motion, finding the position taken by FTB was "substantially justified."

Apple appeals the court's adverse ruling on the application of section 25106. FTB cross-appeals, challenging the determination on the interest deduction and the refund order. We have also consolidated Apple's separate appeal from the court's denial of its motion for attorney fees. We affirm in all respects.

---

[2] All further code references are to the Revenue and Taxation Code unless otherwise indicated. Also, unless otherwise indicated, statutory revisions subsequent to the tax year at issue here do not affect the substance of our analysis.

[3] "The prevailing party may be awarded a judgment for reasonable litigation costs incurred, in the case of any civil proceeding brought by or against the State of California in a court of record of this state in connection with the determination, collection, or refund of any tax, interest, or penalty under this part." (§ 19717, subd. (a).)

[4] "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. . . ." (Code Civ. Proc., § 1021.5.)

## I. Background

As our Supreme Court has observed, "Ours is a global economy. In contrast, government and the taxing authority used to fund it are national and local. This geographic disparity generates difficulties when each jurisdiction seeks its piece of the economic pie, a pie generated by economic activity that knows no borders." (*Microsoft Corp. v. Franchise Tax Bd.* (2006) 39 Cal.4th 750, 754 [47 Cal.Rptr.3d 216, 139 P.3d 1169] (*Microsoft*).)

At the federal level, a United States corporation is taxed on all of its income whether it is earned inside or outside of the United States. To deter United States taxpayers from using related foreign companies to accumulate earnings offshore, the federal Internal Revenue Code (26 U.S.C.; hereafter IRC) requires that a United States entity include in current taxable income, as a constructive dividend, a portion of the United States entity's share of the controlled foreign company's current income.[5] (IRC, §§ 951–965; *Koehring Co. v. U.S.* (7th Cir. 1978) 583 F.2d 313, 317.) California instead focuses on dividends "paid," and takes intercompany dividends into account for tax purposes at the time that they are distributed. (§ 25106.)[6]

*California Taxation of Unitary Business Enterprises*

California imposes a franchise tax on corporations doing business within the state on the corporation's net income derived from or attributable to sources within California. (§ 25101.) When a corporation, and its affiliated corporations, conduct business both within and outside the state as part of a larger unitary business enterprise, it becomes necessary to determine how much of the income of the unitary business is attributable to sources within California.

California has adopted the unitary business principle to determine the portion of a corporate taxpayer's total income that is attributable to this state for California franchise and income tax purposes. (*Container Corp. v. Franchise Tax Bd.* (1983) 463 U.S. 159, 162–163 [77 L.Ed.2d 545, 103 S.Ct.

[5] A United States shareholder is required to report the constructive dividend income even if the controlled foreign corporation has not made any actual distribution to the shareholder. (IRC, § 951.)

[6] Section 25106, subdivision (a)(1) states that "[i]n any case in which the income of a corporation is or has been determined under this chapter with reference to the income and apportionment factors of one or more other corporations with which it is doing or has done a unitary business, all dividends paid by one to another of any of those corporations shall, to the extent those dividends are paid out of the income previously described of the unitary business, be eliminated from the income of the recipient and, except for purposes of applying Section 24345, shall not be taken into account under Section 24344 or in any other manner in determining the tax of any member of the unitary group." (See also fn. 18.)

2933].) A unitary business is one that receives income "from or attributable to sources both within and without the state . . . ." (§ 25101.) "A unitary business is generally defined as two or more business entities that are commonly owned and integrated in a way that transfers value among the affiliated entities." (*Citicorp North America, Inc. v. Franchise Tax Bd.* (2000) 83 Cal.App.4th 1403, 1411, fn. 5 [100 Cal.Rptr.2d 509].) "A unitary business has been judicially defined as one in which the following factors are present: (1) unity of ownership; (2) unity of operations, as evidenced by central accounting, purchasing, advertising, and management divisions; and (3) unity of use in a centralized executive force and general system of operation. [Citations.]" (*Fujitsu, supra*, 120 Cal.App.4th at pp. 468–469.) Apple agrees that it operated as a unitary business in the relevant tax years.

Under the unitary business principle, an affiliated group of corporations under common control or ownership is viewed as a whole or a single unit. A taxpayer that is engaged in a unitary business generally determines its tax based upon a worldwide combined report, which includes the income of all domestic and foreign members (e.g., corporate affiliates and subsidiaries) of the unitary business. A formula is applied " 'apportioning the total income of that "unitary business" between the taxing jurisdiction and the rest of the world[,] . . . taking into account objective measures of the corporation's activities within and without the jurisdiction.' [Citation.]" (*Microsoft, supra*, 39 Cal.4th at p. 756.) "[T]axes are apportioned based on property, payroll, and sales to allocate to California for taxation 'its fair share of the taxable values of the taxpayer . . . .' [Citation.]" (*Fujitsu, supra*, 120 Cal.App.4th at p. 469.)

Effective January 1, 1988, taxpayers that constituted a unitary business were allowed to choose a "water's-edge election" combined report that includes the income of domestic entities and only a portion of the income of certain controlled foreign subsidiaries (controlled foreign corporations; CFC's).[7] (§§ 25110, 25111.) A CFC that is partially included in the water's-edge report has two kinds of earnings: (1) "excluded income" (i.e., income not included in the unitary group's combined report) and (2) "included income" (i.e., income included in the unitary group's combined report). An "inclusion ratio" is provided by section 25110[8] to determine the portion of the income and apportionment factors of the CFC that must be included in

[7] "A CFC, generally, is organized in a foreign country and is more than 50 percent owned by [United States] shareholders." (*Fujitsu, supra*, 120 Cal.App.4th at p. 469, fn. 4.)

[8] During the 1989 tax year in issue, the inclusion ratio was found in subdivision (a)(7) of section 25110. It was renumbered as subdivision (a)(6) in 1995, and is currently found at subdivision (a)(2)(A)(ii).

the water's-edge group's combined report. The "inclusion ratio" is a fraction, the numerator of which is the "Subpart F income" of the CFC and the denominator of which is the entire earnings and profits of the CFC for that taxable year. "Subpart F income" gets its name from subpart F of the IRC (IRC, §§ 951–965). (*Fujitsu, supra,* 120 Cal.App.4th at p. 469.) It expressly includes dividend income. California has chosen to measure Subpart F income by incorporating the federal definition. (*Id.* at p. 477.) A CFC's net income is multiplied by its inclusion ratio to arrive at the CFC's income that is to be included in the water's-edge group's combined report. (*Id.* at p. 476.)

*Apple's California Tax Filings*

Through the taxable year ending September 30, 1988, Apple filed its California franchise tax returns on the basis of a worldwide combined report, which included Apple and all of its domestic and foreign subsidiaries that were engaged in a single unitary business. During 1989 and prior tax years, Apple owned 100 percent of the stock of Apple Computer Inc. Limited, incorporated in Ireland (ACL), which, in turn, owned 100 percent of the stock of two subsidiary corporations, Apple Computer International Limited, a United Kingdom company (ACIL), and AC Limited, incorporated in Ireland (AC Ltd.). During the 1989 tax year in question, ACIL owned 100 percent of the stock of Apple Computer Cayman Finance Limited (AC Cayman), a Cayman Islands company. Apple calculated its inclusion ratios under section 25110 for ACL at 9.6490 percent; for ACIL at 73.7722 percent; and for AC Ltd. at 1.4578 percent. Also included in Apple's worldwide combined report were Apple Computer Holding BV, Apple Australia, Apple Canada and Apple Computer A.B.

Beginning with the 1989 tax year, Apple made a water's-edge election and filed its California franchise tax return on the basis of a water's-edge combined report, which included all the income of its unitary domestic subsidiaries and the partial income of certain CFC's. In 1989, Apple had previously undistributed foreign subsidiary earnings of $698,778,366. It repatriated $86.6 million in dividends from its foreign operations. AC Cayman distributed a dividend of $11.4 million to ACIL, ACIL distributed a dividend of $45.1 million to ACL, AC Ltd. distributed a dividend of $2 million to ACL, and ACL distributed a dividend of $50 million to Apple. In addition, in the 1989 tax year, Apple received the following dividends from its other foreign subsidiaries: $10,440,309 from Apple Computer Holding BV; $8 million from Apple Australia; $18 million from Apple Canada; and $210,035 from Apple Computer A.B.

In its tax filing, Apple applied preferential ordering to the dividends and took the position that the dividends were being paid from the CFC's retained earnings accrued over prior tax years. Since, it argued, California had already taxed the earnings out of which dividends were being paid, section 25106 allowed it to transfer the dividends without tax consequence. As a result, all of these dividends were either excluded from Apple's water's-edge combined report as nonbusiness income or treated as deductible items.[9] FTB agrees that, if preferential ordering is required, nearly all of the dividend distributions would be eliminated from Apple's 1989 California taxable base.[10]

Apple deducted $10,691,430 in interest expenses for its 1989 tax year. FTB disallowed $1,893,886 of this amount on the basis that, to the extent that the dividends paid by Apple's CFC's were paid out of excluded income, they were deductible as "Qualifying Dividends" under section 24411.[11] FTB made an allocation of Apple's domestic borrowing to its foreign subsidiary operations, and applied a formula under section 24344, subdivision (b) to reduce the allowable deduction.[12] As we have noted, as a result of the subsequent

[9] As we discuss *post*, FTB initially characterized the majority of the CFC dividends as partially deductible under section 24411. During Apple's administrative appeal before the state Board of Equalization (SBE), the Second District Court of Appeal issued a decision in *Farmers Bros. Co. v. Franchise Tax Bd.* (2003) 108 Cal.App.4th 976 [134 Cal.Rptr.2d 390] (*Farmers Bros.*). As a result of that decision, FTB subsequently determined that these dividends should be fully deductible instead under section 24402.

[10] If LIFO proration is applied, only a portion of the dividends would be eliminated, and the remainder treated as deductible. This is significant because deductible dividends are treated less favorably than eliminated dividends in several respects. (See *Fujitsu, supra*, 120 Cal.App.4th at p. 479.) In *Abbott Laboratories v. Franchise Tax Bd.* (2009) 175 Cal.App.4th 1346 [96 Cal.Rptr.3d 864], the court upheld FTB's position that such dividends are no longer deductible under section 24402 for tax years after 1989, with the result that the maximum deduction available for those years, under section 24411, is 75 percent.

[11] Section 24411, subdivisions (a) and (b) provide: "(a) For purposes of those taxpayers electing to compute income under Section 25110, 100 percent of the qualifying dividends described in subdivision (c) and 75 percent of other qualifying dividends to the extent not otherwise allowed as a deduction or eliminated from income. 'Qualifying dividends' means those received by the water's-edge group from corporations if both of the following conditions are satisfied: [¶] (1) The average of the property, payroll, and sales factors within the United States for the corporation is less than 20 percent. [¶] (2) More than 50 percent of the total combined voting power of all classes of stock entitled to vote is owned directly or indirectly by the water's-edge group. [¶] (b) The water's-edge group consists of corporations whose income and apportionment factors are taken into account pursuant to Section 25110." (Cf. former § 24411, subds. (a), (g), as amended by Stats. 1988, ch. 989, § 1, p. 3222.)

[12] "If income of the taxpayer which is derived from or attributable to sources within this state is determined pursuant to Section 25101 or 25110, the interest deductible shall be an amount equal to interest income subject to apportionment by formula, plus the amount, if any, by which the balance of interest expense exceeds interest and dividend income (except dividends deductible under Section 24402 and dividends subject to the deductions provided for in Section 24411 to the extent of those deductions) not subject to apportionment by formula. Interest expense not included in the preceding sentence shall be directly offset against interest

decision *Farmers Bros., supra,* 108 Cal.App.4th 976, FTB determined that the dividends should be deductible instead (at least for the 1989 tax year) under section 24402. Section 24402 provides that even in the absence of a unitary business, where the payor corporation was subject to California tax, the recipient corporation may deduct from its gross income dividends that were declared from income already included in the measure of California franchise tax imposed upon the payor corporation.[13] The same allocated portion of the interest deduction was then disallowed under section 24425.[14]

FTB determined that Apple had underpaid its 1989 franchise tax liability and owed an additional $231,038 in tax for that tax year. With interest of $689,444.80, the total amount of FTB's assessment was $920,482.80. Apple paid this amount prior to filing the suit for refund.

*The Trial*

On January 16, 2008, Apple filed its complaint against FTB in San Francisco Superior Court seeking a refund in the amount of $920,482.80, plus interest. A nonjury trial was held February 25 to 26, 2009 (before Judge Harold E. Kahn), presented largely on stipulated facts with limited live testimony. On January 26, 2010, the trial court issued its final statement of decision, ruling against Apple on the LIFO issue, and in favor of Apple on the section 24425 issue. An amended judgment was entered on February 22, 2010, granting Apple a tax refund in the amount of $920,482.80 plus interest. Apple filed its notice of appeal on March 29, 2010, and FTB filed its notice of cross-appeal on April 19, 2010.

*The Attorney Fees Motion*

On March 29, 2010, Apple filed its motion seeking an award of attorney fees. A hearing on the motion was held on April 26, 2010, and the trial court

---

and dividend income (except dividends deductible under Section 24402 and dividends subject to the deductions provided for in Section 24411 to the extent of those deductions) not subject to apportionment by formula." (§ 24344, subd. (b); cf. former § 24344, as amended by Stats. 1987, ch. 1139, § 73, p. 4002.)

[13] "The portion of dividends which may be deducted under this section shall be as follows: [¶] (1) In the case of any dividend described in subdivision (a), received from a 'more than 50 percent owned corporation,' 100 percent. [¶] (2) In the case of any dividend described in subdivision (a), received from a '20 percent owned corporation,' 80 percent. [¶] (3) In the case of any dividend described in subdivision (a), received from a corporation that is less than 20 percent owned, 70 percent." (§ 24402, subd. (b); cf. former § 24402, as amended by Stats. 1984, ch. 193, § 131, p. 618.)

[14] "No deduction shall be allowed for any amount otherwise allowable as a deduction which is allocable to one or more classes of income not included in the measure of the tax imposed by this part, regardless of whether that income was received or accrued during the taxable year." (§ 24425, subd. (a); cf. former § 24425, added by Stats. 1955, ch. 938, § 20, pp. 1577, 1588.)

issued an order denying Apple's motion for attorney fees on June 22, 2010. Apple filed and served a timely notice of appeal on the attorney fees issue on July 14, 2010.

## II. Discussion

### A. *Appealability*

FTB first contends that Apple is precluded from appealing the court's adverse ruling on the distribution ordering issue because it succeeded in obtaining the full refund requested in its complaint.[15] Since Apple obtained a judgment in its favor, FTB insists that Apple is not a "party aggrieved" and therefore may not appeal the judgment. (Code Civ. Proc., § 902;[16] see *Estate of Funkenstein* (1915) 170 Cal. 594, 595 [150 P. 987] [generally, a party in whose favor judgment is entered is not a party aggrieved.].) We disagree.

Apple's notice of appeal states that it is appealing from "the portion of the judgment . . . which incorporates the [trial court's] ruling against [Apple] contained in the Final Statement of Decision (pp. 3–7) relating to the distribution ordering issue." FTB correctly notes that an appeal can only be taken from a final judgment, not from a statement of decision, and that Apple cannot appeal a portion of the trial court's statement of decision. (*Bailey v. County of El Dorado* (1984) 162 Cal.App.3d 94, 97–98 [210 Cal.Rptr. 237]; 7 Witkin, Cal. Procedure (5th ed. 2008) Judgment, § 10, p. 554 [an oral or written opinion by a trial judge "may be helpful . . . in interpreting ambiguous or uncertain portions of the judgment" but "it is not itself . . . a judgment"].) However, " 'any party aggrieved by an appealable order has a right to appeal therefrom, even though the order is in form apparently favorable to him.' " (*Garcia v. San Gabriel Ready Mixt* (1959) 173 Cal.App.2d 355, 357 [343 P.2d 327].) "One is considered 'aggrieved' whose rights or interests are injuriously affected by the judgment. [Citations.]" (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 737 [97 Cal.Rptr. 385, 488 P.2d 953].) We liberally construe the issue of standing and resolve doubts in favor of the right to appeal. (*Ajida Technologies, Inc. v. Roos Instruments, Inc.* (2001) 87 Cal.App.4th 534, 540 [104 Cal.Rptr.2d 686].)

Apple insists that it is a "party aggrieved" because the distribution ordering issue was fully litigated before the trial court, was necessarily determined in the trial court's decision in that the court reached the interest expense deduction issue at all only as a consequence of its ruling on this question, and

[15] By order of May 26, 2010, we denied FTB's motion to dismiss Apple's appeal, without prejudice to consideration of the issue on the merits of the appeal.

[16] Code of Civil Procedure section 902 provides in relevant part that "[a]ny party aggrieved may appeal in the cases prescribed in this title."

that it will be subject to collateral estoppel on the distribution ordering issue with respect to claims for this and future tax years if it cannot appeal the adverse determination.[17]

FTB contends that the two issues litigated before the trial court were merely "separate, alternative grounds" upon which the trial court could have relied in awarding the refund to Apple, and that the court's determination of the distribution ordering issue was not "necessary" to the judgment. FTB's reliance on *Estate of Funkenstein* is misplaced. There the court relied upon "well settled" law to find the judgment in favor of appellants to be nonappealable because "where a finding is *contrary to a judgment or order rendered, or immaterial to it,* and the judgment or order is based upon other findings that do support it, the findings contrary or immaterial are not adjudications against the party who prevails." (*Estate of Funkenstein, supra,* 170 Cal. at pp. 595–596, italics added.)

We do not agree that the trial court's adjudication of the distribution ordering issue under section 25106 was "immaterial" to the judgment entered. The issue raised the legal question of whether the dividends that Apple received from its foreign subsidiaries in the 1989 tax year should be treated as paid first out of current and prior years' earnings already taxed before consideration of any other earnings (preferential ordering), or subject to LIFO ordering under the approach applied by FTB. The parties stipulated that "[n]either . . . § 24425 nor § 24344 applies to dividends that are eliminated under . . . § 25106." If preferential ordering is applied, all of the dividends in question would be deemed paid from previously taxed earnings and thus eliminated from Apple's income. (§ 25106.) If LIFO ordering is applied, some of the subject dividends would be eliminated and the remainder of the dividends would be deductible. (§ 24402.) The trial court's determination of the distribution ordering issue decided whether Apple's dividends should be eliminated in the first instance, or whether they should be deducted. Only the deductible dividends may result in disallowance of interest expense deductions (§ 24425)—the second issue that was then addressed and decided by the trial court.

[17] Apple states that it is engaged in a present controversy involving the same issues (the distribution ordering issue and the interest expense issue) against the same party (FTB) in administrative proceedings currently pending before the SBE for the same tax year (1989) due to federal income tax adjustments to Apple's 1989 tax year made by the Internal Revenue Service subsequent to the FTB audit of Apple that gave rise to the instant litigation. (SBE case No. 432901.) We grant Apple's May 13, 2010 request to take judicial notice of documents related to this proceeding—exhibits A through G to Apple's motion for judicial notice in appeal No. 128091. We also note that Apple's water's-edge election was required to be made, under then applicable statute, by written contract with FTB for an initial term of five years. (Former § 25111, subd. (a), as amended by Stats. 1989, ch. 362, § 13, p. 1494.) Apple asserts that it is at various stages of administrative review before the FTB for its tax years 1990 through 2007.

Nor do we find persuasive FTB's insistence that we should decline to review the trial court's ruling on the distribution ordering issue because it will then lack collateral estoppel effect, despite the fact that the issue was fully litigated between these parties. FTB argues that the decision lacks any precedential effect in any event because the court's determination "was entirely unnecessary to the judgment." An element of collateral estoppel is the requirement that "the issue to be precluded was actually litigated and necessarily decided. [Citations.] The ' "necessarily decided" ' requirement generally means only that the resolution of the issue was not ' "entirely unnecessary" to the judgment in the initial proceeding.' [Citation.]" (*Zevnik v. Superior Court* (2008) 159 Cal.App.4th 76, 83 [70 Cal.Rptr.3d 817] (*Zevnik*).) As we have discussed, we do not agree in the first instance that the court's resolution of the distribution ordering issue was entirely unnecessary to the judgment. FTB is correct that we could nevertheless *deprive* the ruling of collateral effect by declining to decide it. In *Zevnik*, the court held that there should be no preclusive effect given to *alternative* grounds used by the trial court for its decision where an appellate court affirms the decision on only one of the alternative grounds without deciding the other grounds: "When an appellate court declines to review a particular ground for a trial court decision, the reliability of that ground is not enhanced and is left in the same condition as if there had been no opportunity for review." (*Id.* at p. 85.)

For the reasons we have discussed above, we doubt our ability to decide the propriety of Apple's interest expense deduction without necessarily addressing the issue of distribution ordering, and we do not agree that the distribution ordering issue was merely an alternative ground on which the trial court could have ruled in Apple's favor. Even if it were possible for us to do so, we see little justification for avoiding the question. "The principal reason for an appellate court to decline to review alternative grounds for a trial court decision is judicial economy . . . ." (*Zevnik, supra*, 159 Cal.App.4th at p. 85.) There is nothing, however, that prevents us from considering more than one ground for the court's judgment, particularly when we are aware of collateral litigation and believe "that to establish collateral estoppel on an alternative ground would be beneficial . . . ." (*Ibid.*) The interests of judicial economy are not served by requiring the parties to continually relitigate issues. "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." (*Montana v. United States* (1979) 440 U.S. 147, 153–154 [59 L.Ed.2d 210, 99 S.Ct. 970], fn. omitted.)

In sum, we find that Apple has standing to pursue its appeal on this question, and we see no persuasive policy reason to decline to consider it.

B. *Standard of Review*

In our review on the merits, "we apply the substantial evidence test to the trial court's factual findings, but review legal determinations independently. [Citations.]" (*Fujitsu, supra*, 120 Cal.App.4th at p. 470.) In our review, we are mindful of our Supreme Court's declaration that ambiguities in the governing statutes are resolved in favor of the taxpayer. (*Agnew v. State Bd. of Equalization* (1999) 21 Cal.4th 310, 326 [87 Cal.Rptr.2d 423, 981 P.2d 52].)

C. *The Distribution Ordering Issue and Application of Section 25106*

FTB characterizes this case as an attempt by Apple to avoid, or indefinitely defer, California taxes and to secure an improper "double benefit." Apple argues that this is instead a case of "double taxation." Apple complains that it previously paid $30 million in California franchise tax on the earnings of its CFC's which it accumulated, and that section 25106 provides a "plain and broad mandate" that unitary members "be permitted to move previously taxed unitary earnings among themselves, in the form of dividends, without tax incident." (Fn. omitted.) Apple asserts that *Fujitsu* is controlling here because *Fujitsu* addressed the same distribution ordering issue now before this court, and that FTB simply disagrees with the court's holdings in *Fujitsu* and seeks to "avoid its application." (Fn. omitted.) The trial court found that *Fujitsu* did not address the precise issue presented here, as do we.

*Fujitsu* did address application of section 25106, and the inclusion ratio to be applied to CFC income under section 25110, but in a different context. In *Fujitsu*, a multinational California-headquartered parent corporation filed water's-edge combined income tax returns that included combined income of its unitary group members incorporated in the United States, and Subpart F income from its CFC's. (*Fujitsu, supra*, 120 Cal.App.4th at pp. 468, 469.) The corporation characterized a United Kingdom tax refund it received, under the terms of a tax treaty, from the United Kingdom subsidiary as a dividend on its combined return, while FTB treated it as nondividend income. (*Id.* at pp. 471–472.) The corporation sued for a refund encompassing four tax years. FTB denied the refund, the trial court granted it, and the appellate court affirmed. (*Id.* at pp. 470–489.)

The *Fujitsu* court first held that, in determining the numerator (Subpart F income) of the inclusion ratio for taxable CFC income (§ 25110), "[i]t is clear

that California has chosen to measure Subpart F income by incorporating the federal definition—a standard that implies California's willingness to follow the federal lead. In defining Subpart F income for purpose of calculating the inclusion ratio defined in section 25110 . . . absent clear language in the statute or in administrative regulations refusing to do so, we may assume California has adopted into its definition of Subpart F income the federal exclusions, including 'distributions of previously taxed income under [IRC §] 959(b).' [Citation.]" (*Fujitsu, supra*, 120 Cal.App.4th at p. 477.) Moreover, the court found that the "clear statutory language" of section 25106[18] separately "ensures that amounts included in the combined income of a unitary group can be moved (in the form of dividends) among members of the unitary group without tax consequence. . . . In a combined unitary group, the subsidiaries' apportioned earnings are taxed as income of the unitary business. Because the state has already taxed the earnings out of which dividends are paid, the dividends themselves are not subject to taxation. This prevents dividends from subsidiaries from being taxed twice—once as earnings of the issuing subsidiary, and once as separate income to the unitary business from receipt of the dividend. [¶] . . . [¶] . . . [T]he legislative scheme contemplates that 'dividends paid out of unitary income of lower-tier subsidiaries should be excluded from all the factors used in the computation of the amount included under [section] 25110 . . . : that is, such dividends should be excluded from the numerator (Subpart F income), the denominator (earnings and profits) and the amount to which the inclusion ratio is applied (the income of the [CFC]).' " (*Fujitsu*, at pp. 477–478.) While the inclusion ratios applied to Apple's various CFC's were originally contested, FTB subsequently conceded the issue in light of *Fujitsu*, and there is no contention that the disputed dividends were included in either component of the fraction used here.

The *Fujitsu* court then considered the ordering to be applied to payment of dividends *within* a tax year "where part of the CFC's income is Subpart F income and thus included in the unitary group's tax return, and some is not." (*Fujitsu, supra*, 120 Cal.App.4th at p. 479.) The court noted an absence of any "statute, regulation or other administrative pronouncement provid[ing] clear guidance on this question" and applied a " 'construction . . . to favor the taxpayer rather than the government.' " (*Id.* at p. 480.) The court concluded that "dividends paid by first-tier subsidiaries from current year earnings

[18] For the 1989 tax year at issue in this case, section 25106 (added by Stats. 1967, ch. 326, § 1, p. 1520) provided in relevant part: "In any case in which the tax of a corporation is or has been determined under this chapter with reference to the income and apportionment factors of another corporation with which it is doing or has done a unitary business, all dividends paid by one to another of such corporations shall, to the extent such dividends are paid out of such income of such unitary business, be eliminated from the income of the recipient and shall not be taken into account under Section 24344 or in any other manner in determining the tax of any such corporation."

should be treated as paid (1) first out of earnings eligible for elimination under section 25106, with (2) any excess paid out of earnings eligible for partial deduction under section 24411. In the case of a CFC that is partially included in a unitary group, the CFC will be able to move amounts that have been included in the combined income of the unitary group without tax incident only by adopting the ordering rule described above." (*Fujitsu,* at p. 480, italics omitted.)

The issue here, however, is characterizing the source of the dividend payments when the CFC's also have an undistributed pool of accumulated earnings from *prior* tax years in addition to a surplus in the current year.[19] The parties stipulated that Apple had sufficient "included income" from the 1989 tax year and prior years to fully eliminate, under section 25106, almost all of the CFC dividends paid in the 1989 tax year.[20]

*Fujitsu* did not discuss at all how earnings accumulated over multiple tax years should be treated. Apple contends, however, that the rationale of *Fujitsu* dictates that retained earnings from *prior* years that have already been taxed as "included income" must be deemed to be the first source of a dividend until that retained surplus has been exhausted. Only in that way, Apple argues, can double taxation be avoided and the California tax policy reflected in section 25106, to ensure that amounts included in the combined income of a unitary group can be moved among members of the unitary group in the form of dividends without tax consequence, be respected.

FTB first disputes Apple's contention that the CFC accumulated earnings necessarily represent amounts which were "included in the combined income of the unitary group" since only a fraction of this income (based on Subpart F income or "included income") is taxed, and the balance is excluded and

[19] Each party submits illustrative examples of their positions based on allocations between hypothetical distinct "pools" of income, included and excluded, and within and among various tax years. "The reality is that the dividends . . . are paid from a single pool of income to which a mathematical ratio (that is unrelated to the amount of dividends paid) is applied as a function of tax law." (*Appeal of Apple Computer, Inc.* (Nov. 20, 2006, 2006-SBE-002) [2006 Transfer Binder] Cal.Tax Rptr. (CCH) ¶ 404-085, p. 34,115 [2006 Cal. Tax Lexis 431].)

[20] FTB applied pro rata ordering within the 1989 tax year to the dividends Apple received here, allocating first to otherwise included Subpart F income (and thereby excluding that portion of the dividend from income under § 251106), and then to excluded income, with a deduction allowed under section 24402 for that portion. *Fujitsu* requires exhaustion of included income on a dollar-for-dollar basis before any allocation to excluded income. (*Fujitsu, supra,* 120 Cal.App.4th at p. 480.) FTB has since abandoned its argument that pro rata ordering is required within a tax year, although the SBE continues to take the position that a proportionate allocation should be applied. It appears to make no difference in the tax year at issue here because of the full deduction allowed under section 24402.

therefore outside the ambit of section 25106. (See *Safeway Stores, Inc. v. Franchise Tax Board* (1970) 3 Cal.3d 745, 750–751 [91 Cal.Rptr. 616, 478 P.2d 48] (*Safeway*) ["fact that the combined or consolidated report of the group of corporations reflected total gross income and total deductions of all of the corporations, in order to arrive at the group's total net operating income to which the apportionment formula was applied, does not mean that the total gross income was included in the measure of the tax"].) As FTB also notes, Apple cannot demonstrate any actual double taxation here, since its 1989 tax year dividends, to the extent not entirely "eliminated" from its income under section 25106, were fully deductible under section 24402.[21] FTB further asserts that, unlike the circumstances in *Fujitsu*, there is specific statutory and regulatory authority for its position here.

1. *Application of IRC Section 316 and Revenue and Taxation Code Former Section 24495*

FTB relies upon IRC section 316 and Revenue and Taxation Code former section 24495 as establishing a definitive LIFO ordering rule for dividends paid. IRC section 316(a)(2) defines a dividend as "any distribution of property made by a corporation to its shareholders . . . *out of its earnings and profits of the taxable year* . . . ." (Italics added.) It further provides that "[e]xcept as otherwise provided in this subtitle . . . , every distribution is made out of earnings and profits to the extent thereof, *and from the most recently accumulated earnings and profits*. . . ." (Italics added.) Its purpose was to preclude a corporation from declaring which year's profits were being distributed. (*Edwards v. Douglas* (1925) 269 U.S. 204, 216 [70 L.Ed. 235, 46 S.Ct. 85].) Former section 24495 and its successor statutes have either followed the language of IRC section 316 or expressly incorporated its provisions.[22]

[21] FTB treated $4,824,500 of the $50 million dividend Apple received from ACL in that tax year as paid from the included income eligible for elimination from Apple's income under section 25106, and the balance of the dividend ($45,175,500) as paid from excluded income and deductible under section 24402. Therefore none of the $50 million dividend was included in Apple's corporate tax base subject to California tax. However, Apple is correct that there is still a significant difference between dividend exclusion and dividend deductibility because of the 75 percent limitation on deductibility under the now applicable section 24411. (See fn. 10, *ante*.) In addition, section 24425 disallows expense deductions allocable to deductible dividends. (See *Great Western Financial Corp. v. Franchise Tax Bd.* (1971) 4 Cal.3d 1 [92 Cal.Rptr. 489, 479 P.2d 993] (*Great Western*).)

[22] "Section 316 of the [IRC], relating to the definition of dividends, shall apply." (Former § 24495, added by Stats. 1987, ch. 1139, § 122, p. 4010 [operative for income years beginning on or after Jan. 1, 1987] and repealed by Stats. 1991, ch. 117, § 81, p. 778, eff. July 16, 1991.) For tax years beginning on or after January 1, 1991, the operative section was former section 24451 (added by Stats. 1991, ch. 117, § 82, p. 778 ["provisions of Subchapter C of Chapter 1 of Subtitle A of [IRC] [sections 301–386], relating to corporate distributions and adjustments, shall apply except as otherwise provided"]). Section 24451 was further amended for tax years

FTB regulations also incorporate the LIFO dividend ordering rule.[23] In the water's-edge context, the regulation in effect for the 1989 tax year provided in relevant part: "The source of distribution for an entity which has Subpart F income shall follow the rules set forth in paragraphs (1) and (2)." (Cal. Code Regs., tit. 18, former reg. 24411, subd. (i)(3) (hereafter, Regulation 24411) [currently Cal. Code Regs., tit. 18, § 24411, subd. (e)(3)].) Paragraph (1) of Regulation 24411, subdivision (i), provided: "(i) Sources of distributions. [¶] (1) Ordering. For purposes of determining the application of Sections 24402, 24410, 24411 and 25106 . . . , dividends shall be considered to be paid out of current year's earnings and profits to the extent thereof and from the most recently accumulated earnings and profits by year thereafter."

2. *IRC Section 959(c)*

Apple contends that IRC section 316 is only a rule of general applicability and nevertheless expressly allows for alternative ordering in that it governs "[e]xcept as otherwise provided . . . ." In Apple's view, IRC section 959(c) otherwise provides and "trumps" IRC section 316. We disagree. Apple is correct that IRC section 959(c) provides that distributions received from a foreign subsidiary are deemed to have been paid first from earnings and profits attributable to amounts previously included in taxable gross income and then to other earnings and profits. But as FTB points out, IRC section 959(c), unlike IRC section 316, is not expressly incorporated in the Revenue and Taxation Code, and the federal tax scheme differs with respect to tax treatment of income from CFC's, deeming it to be a constructive dividend paid in the year earned (and thereby taxable income to the parent company), whether or not any of the amounts are repatriated in that year. *Fujitsu* did not hold otherwise, since it expressly addressed only current year earnings. *Fujitsu*'s sole discussion of IRC section 959, and application of the double

beginning on or after January 1, 1993, and now provides: "Subchapter C of Chapter 1 of Subtitle A of the [IRC], relating to corporate distributions and adjustments, shall apply, except as otherwise provided." (As amended by Stats. 1993, ch. 873, § 40, p. 4642.)

Section 24495 was originally added to the Revenue and Taxation Code in 1955 and largely mirrored the language of IRC section 316, and provided in relevant part that "Except as otherwise provided in this part, every distribution is made out of earnings and profits to the extent thereof, and from the most recently accumulated earnings and profits." (Former § 24495, subd. (b), added by Stats. 1955, ch. 938, § 20, pp. 1577, 1599 & repealed by Stats. 1987, ch. 1139, § 121, p. 4010, eff. Sept. 25, 1987.)

[23] FTB began the process of promulgating regulations for California's water's-edge statutes in 1987. (Former § 26422, as amended by Stats. 1951, ch. 374, § 30, p. 1177 & repealed by Stats. 1993, ch. 31, § 60, p. 318, eff. June 16, 1993 ["[FTB] shall have the power and it shall be its duty to administer this part. It shall prescribe all such rules and regulations as are necessary and reasonable to carry out the provisions of this part and may prescribe the extent, if any, to which any ruling or regulation shall be applied without retroactive effect"]; now found at § 19503, subd. (a).) The water's-edge regulations were adopted and filed on January 3, 1989. (Cal. Reg. Notice Register 89, No. 2-Z, p. 94.)

taxation principles underlying that section, was in the context of calculation of the appropriate inclusion ratios under section 25110. *Fujitsu*'s assumption that California had adopted into its definition of Subpart F income the federal exclusion " 'distributions of previously taxed income' " under IRC section 959(b) was further premised on the absence of "clear language in the statute or in administrative regulations refusing to do so." (*Fujitsu, supra*, 120 Cal.App.4th at p. 477.) *Fujitsu* did not consider the clear language of IRC section 316, nor that of Regulation 24411, and it did not purport to invalidate Regulation 24411.

Nor are we persuaded by Apple's insistence that section 25106 implicitly adopts an equivalent preferential ordering rule in its temporal references to tax of a corporation which "is *or has been* determined under this chapter with reference to the income and apportionment factors of one or more corporations with which it is doing *or has done* a unitary business." (§ 25106, subd. (a)(1), italics added.) Section 25106 says nothing about ordering of dividends, or the tax year in which they are recognized. Section 25106 expresses a clear legislative policy against imposition of double taxation on income, but we are not convinced that the double taxation specter Apple invokes necessarily arises simply by virtue of LIFO ordering of dividend distributions. Certainly it does not appear that it did so with respect to the tax year at issue here.

In Apple's administrative appeal in this matter, the SBE's opinion included a detailed analysis of the dividend ordering issue. (*Appeal of Apple Computer, Inc.*, *supra*, Cal.Tax Rptr. (CCH) ¶ 404-085, pp. 34,110–34,115 [2006 Cal. Tax Lexis 431 at pp. *6–*32].) The Legislature has delegated to the SBE the duty of hearing and determining appeals from actions of the FTB. (§§ 19045–19048.) In rejecting Apple's proposed preferential ordering, the SBE found that the plain language of IRC section 316 and Regulation 24411 required LIFO ordering as between tax years (and pro rata allocation between included and excluded income within the tax year). (*Appeal of Apple Computer, Inc.*, at pp. 34,111, 34,114 [2006 Cal. Tax Lexis 431 at pp. *11–*16, *21–*28].) Further, it found that the ordering suggested by Apple would "render meaningless the statutory and regulatory references to 'current' and 'most recent' earnings." (*Id.* at p. 34,111 [2006 Cal. Tax Lexis 431 at p. *2].) The SBE concluded that CFC dividends paid from accumulated earnings must be "deemed paid from the current year's earnings until those earnings are exhausted, and thereafter from the most recent years' earnings, exhausting each year's earnings in turn."[24] (*Appeal of Apple Computer, Inc.*, at p. 34,115 [2006 Cal. Tax Lexis 431 at p. *32].)

[24] As we note above, the SBE also concluded that dividends within a tax year are "deemed paid from included income and excluded income in the ratio that included and excluded income bear to total income." (*Appeal of Apple Computer, Inc.*, *supra*, Cal.Tax Rptr. (CCH) ¶ 404-085, p. 34,115 [2006 Cal. Tax Lexis 431 at p. *32].) This is inconsistent with *Fujitsu*'s

The SBE has accumulated a " 'body of experience and informed judgment' in the administration of the business tax law 'to which the courts and litigants may properly resort for guidance.' [Citation.]" (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 14 [78 Cal.Rptr.2d 1, 960 P.2d 1031].) The level of deference due to an agency's statutory and regulatory interpretation turns on a legally informed, commonsense assessment of its merit in the context presented. (*Ibid.*) "Although we are not bound by administrative decisions construing a . . . statute, we accord ' "great weight and respect to the administrative construction." ' [Citation.]" (*Hoechst Celanese Corp. v. Franchise Tax Bd.* (2001) 25 Cal.4th 508, 524 [106 Cal.Rptr.2d 548, 22 P.3d 324].)

We agree with the SBE's conclusion that LIFO ordering as between tax years is consistent with clear statutory and regulatory authority, and that it deters abuse by preventing a corporation from declaring what year's earnings are being distributed. To allow preferential ordering of dividends between tax years would allow potentially indefinite tax avoidance by ignoring consideration of earnings attributable to untaxed excluded income until all included income had been exhausted. We believe that the policy of section 25106 to prevent double taxation is still honored in allowing total exclusion for dividends received within a tax year to the extent of *included* income for that tax year.

D. *The Interest Deduction*

"Deductions may be allowed or withheld by the Legislature as it sees fit [citations] and such deductions, like credits and exemptions, are to be narrowly construed against the taxpayer [citations]." (*Great Western, supra,* 4 Cal.3d at pp. 5–6.) "In a suit for refund of tax, the burden of proof is on the taxpayer. [Citation.] The taxpayer must not only prove that the tax assessment is incorrect, but also he must produce evidence to establish the proper amount of the tax. [Citations.]" (*Honeywell, Inc. v. State Bd. of Equalization* (1982) 128 Cal.App.3d 739, 744 [180 Cal.Rptr. 479].) A taxpayer may recover a refund only if he shows " 'that more has been exacted than in equity and good conscience should have been paid.' [Citations.]" (*Sprint Communications Co. v. State Bd. of Equalization* (1995) 40 Cal.App.4th 1254, 1259 [47 Cal.Rptr.2d 399].)

---

requirement to first exhaust included income on a dollar-for-dollar basis. (*Fujitsu, supra,* 120 Cal.App.4th at p. 480.) The SBE found that the Supreme Court's decision in *Safeway, supra,* 3 Cal.3d at pages 749–750 approved proration of dividends, and was controlling. (*Appeal of Apple Computer, Inc.*, at p. 34,114 [2006 Cal. Tax Lexis at pp. *25–*26].) It concluded that there was "no practical or theoretical reason" for preferential ordering. (*Id.* at p. 34,115 [2006 Cal. Tax Lexis 431 at p. *30].) While the issue is not squarely presented here, we see no reason to depart from our colleagues' thoughtful analysis in *Fujitsu,* and we do not accept or adopt the SBE position on this question.

In its 1989 tax year, Apple deducted interest expenses of $10,691,430. Section 24425 disallows interest deductions "*allocable* to one or more classes of income not included in the measure of the tax imposed by this part . . . ." (§ 24425, subd. (a), italics added.) Section 24425 applies whenever income is eliminated from tax "under any authority or for any purpose," thus preventing a taxpayer from receiving a double benefit in deducting interest expenses incurred in the production of nontaxable income. (*Great Western, supra*, 4 Cal.3d at p. 6; see *Appeal of Zenith National Insurance Corporation* (Jan. 8, 1998, 1998-SBE-001) [1995–1999 Transfer Binder] Cal.Tax Rptr. (CCH) ¶ 402-965, p. 28,990 [1998 Cal. Tax Lexis 1] (*Zenith*).[25]) Since FTB determined that a portion of Apple's dividend distributions were paid from excluded income, and were fully deductible under section 24402, FTB also allocated a portion of the interest Apple paid on its domestic borrowings, and deducted during the 1989 tax year, to those fully deductible dividend distributions.[26] FTB disallowed $1,893,886 of the claimed deduction, applying a formula based on the ratio of Apple's foreign investments to the assets of the combined water's-edge reporting group. FTB asserts here, as it did in the trial court, that because money is "fungible," a portion of Apple's domestic interest expense was properly "allocable"—and properly allocated—to its foreign source dividend distributions paid from excluded income.

The evidence with respect to this issue was largely undisputed. There was a dispute, however, as to the dominant purpose of Apple's borrowings. The trial court made detailed findings of fact on this question. It found that, while FTB failed to offer evidentiary support for disallowance of the interest deduction, Apple presented substantial evidence showing that the dominant purpose of its borrowings in 1989 was to fund its domestic operations. The evidence established that Apple had no long-term debt in 1989, 1988 or 1987, and its short-term debt had an average date to maturity of 26 days in 1989; Apple incurred short-term debt to finance its domestic working capital needs; Apple's seven CFC dividend payors held $601 million in cash reserves in 1989, and did not need to borrow funds from Apple to fund their operations; there were no intercompany loans from Apple to any of the seven dividend payors during the 1989 tax year; and there was no other flow of funds from Apple to the seven CFC dividend payors during the 1989 tax year. The court noted that FTB's own witness on this issue (Jenice Twomey) testified that

[25] The SBE later clarified aspects of this opinion that are not relevant here. (See *In re Appeal of Zenith National Ins. Corp.* (June 25, 1998, 1998-SBE-001-A) [1995–1999 Transfer Binder] Cal.Tax Rptr. (CCH) ¶ 403-048 [1998 Cal. Tax Lexis 651].)

[26] Expense disallowance under section 24425 does not apply to dividends *eliminated* under section 25106.

Apple's borrowing was for its domestic operations, and that the witness found no evidence of loans or other flow of funds from Apple to the dividend-paying CFC's.[27] The court found that Apple had proven the absence of any connection between its borrowings generating the interest expense and the dividend payors.

FTB argues that, nevertheless, "it is reasonable to infer that, when Apple incurred indebtedness to fund its domestic operations, a portion of the proceeds from [that] indebtedness was also used to carry the assets of the subsidiaries that paid the dividends at issue in this case," and that a portion of the interest expense must therefore be allocable to the dividend income deducted. The gist of this argument is that even when money is borrowed for a specific purpose, the borrowing will generally free other funds for discretionary purposes and that the expense thereby contributes to all aspects of the corporate operations. In this instance, FTB further contends that the evidence shows that Apple "admitted" that it borrowed to fund its domestic activities in order to avoid the tax consequences of repatriation of dividends from its cash-rich foreign subsidiaries (sometimes referred to as " 'tax arbitrage' "; see *Hunt-Wesson, Inc. v. Franchise Tax Bd. of Cal.* (2000) 528 U.S. 458, 465–466 [145 L.Ed.2d 974, 120 S.Ct. 1022] (*Hunt-Wesson*)).[28] Consequently, FTB insists, even if interest cannot be directly allocated, it may still be allocated indirectly by application of a formula which apportions the interest expense between taxable and nontaxable income.

Both Apple and FTB cite the SBE determination in *Zenith, supra,* Cal.Tax Rptr. (CCH) ¶ 402-965 [1998 Cal. Tax Lexis 1], in support of their respective positions.[29] In *Zenith,* the taxpayer (Zenith National Ins. Corp.) received nontaxable dividends from a wholly owned subsidiary over several tax years. During those same tax years, Zenith incurred interest expense in connection with the issuance of corporate debentures used to develop a portfolio of preferred stock paying taxable dividends. Zenith deducted all of its debenture-related interest expense, but on audit FTB used a formula to reallocate a pro rata portion of this interest expense to the nontaxable insurance dividends. The SBE considered the question of "how properly to allocate, if at

[27] FTB acknowledged that its "audit file [of this case] reveals no information to directly allocate the interest expense to the excluded income—the dividends deducted under . . . § 24402."

[28] FTB cites statements in Apple's September 1989 annual report acknowledging that "[a]mounts held by foreign subsidiaries would be subject to U.S. income taxation upon repatriation to the U.S. to meet domestic cash needs."

[29] Apple did not raise the interest expense issue in its appeal before the SBE, and the SBE's opinion does not address it.

all, the . . . interest expensebetween appellant's taxable and nontaxable activities." (*Id.* at p. 28,990 [1998 Cal. Tax Lexis 1 at p. *3].) The SBE found that Zenith had justified the deductions for all but one tax year, and that allocation of the interest deduction was therefore required for that single year. (*Id.* at p. 28,992 [1998 Cal. Tax Lexis 1 at p. *19].)

Premised on the "fungibility of money," FTB took the position that interest, by its nature, is not susceptible to direct allocation, and could only be indirectly allocated by formula. (*Zenith, supra,* Cal.Tax Rptr. (CCH) ¶ 402-965, pp. 28,991–28,992 [1998 Cal. Tax Lexis 1 at p. *18].) The SBE said that the establishment of the proper allocation of interest expense would instead involve an inquiry into both the purpose of the borrower and an accounting as to the actual use or uses the borrowed funds were put. (*Id.* at p. 28,992 [1998 Cal. Tax Lexis 1 at p. *14].) The SBE held that the burden was on the taxpayer to establish a direct allocation between the borrowing expense and the investment purpose, and that FTB's allocation formula would otherwise apply: "In the absence of direct evidence linking indebtedness with a particular purchase, the IRS, and this Board, will determine whether the totality of the facts and circumstances establish a sufficiently direct relationship between the borrowing and the investment to allow for a direct allocation between those two items. [Citation.] Unless the taxpayer can establish its dominant purpose and a sufficiently direct relationship between the expense and the income, [FTB's] allocation formula will provide the best means to allocate interest expense between taxable and nontaxable activities. Further, due to the *factual nature of the inquiries presented by this analysis*, it is also clear that the taxpayer must carry the general burden of proving its dominant purpose for incurring and/or continuing the subject obligations (and the related interest expense), as well as the burden of demonstrating the actual use of the subject funds, by tracing or some other method." (*Ibid.*, italics added.) The SBE has followed this analysis in subsequent cases. (See, e.g., *In the Matter of the Appeal of American General Realty Investment Corp., Inc.*, (June 25, 2003) [2003–2005 Transfer Binder] Cal.Tax Rptr. (CCH) ¶ 403-483, p. 31,022 [a nonprecedential summary decision stating, "establishment of the proper allocation of interest expense may involve an inquiry into both the purpose of the borrower and an accounting as to what use or uses the borrowed funds were put"].)

We again find the SBE analysis on this issue persuasive. The issue is not whether FTB may seek to allocate otherwise deductible expenses between taxable and nontaxable income. Unquestionably it can. (See *Hunt-Wesson, supra*, 528 U.S. at p. 466 [Supreme Court has "consistently upheld deduction denials that represent reasonable efforts properly to allocate a deduction between taxable and tax-exempt income, even though such denials mean that the taxpayer owes more than he would without the denial"].) The question is simply whether Apple then met its burden under the "totality of facts and

circumstances" to establish that its dominant purpose in the borrowing, and the actual use of the funds, was to support, and was allocable to, its domestic (taxable) income-producing activities. The trial court found that it did and we believe that substantial evidence supports its findings.

FTB's approach would ignore *Zenith*, and would instead implement an effectively conclusive presumption that if a domestic corporation borrows at all, it has done so at least in part to support its other unitary operations, regardless of any contrary showing by the taxpayer. We decline to adopt a position that would push the concept of fungibility of money "past reasonable bounds." (*Hunt-Wesson, supra*, 528 U.S. at p. 466.)

E. *Attorney Fees*

Apple sought an award of attorney fees of $683,492.73 under section 19717, subdivision (a) and Code of Civil Procedure section 1021.5. Section 19717, subdivision (a) permits an award of reasonable litigation costs to a prevailing party in an action such as this for refund of a tax. Code of Civil Procedure section 1021.5 encompasses the so-called "private attorney general" doctrine, allowing the court to award fees to a successful litigant who has enforced an important right affecting the public interest. The trial court declined to award fees on either basis.

We review the court's ruling denying fees for abuse of discretion. (*Agnew v. State Bd. of Equalization* (2005) 134 Cal.App.4th 899, 909–910 [36 Cal.Rptr.3d 464].) To prevail, Apple must demonstrate that the trial court's decision " 'exceeded the bounds of reason.' " (*Ibid.*, fn. omitted.) "When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court. [Citations.]" (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478–479 [243 Cal.Rptr. 902, 749 P.2d 339].)

1. *Section 19717*

We assume for our discussion that Apple meets the statutory threshold criteria under the Revenue and Taxation Code as a "prevailing party" in that it "substantially prevailed with respect to the amount in controversy." (§ 19717, subd. (c)(2)(A)(i).)[30] However, section 19717 further provides that

[30] FTB argues that Apple fails to satisfy the further statutory requirement under section 19717, subdivision (b)(1) that the party must first have pursued and exhausted its administrative remedies, because Apple did not pursue the interest expense deduction issue before the SBE. Apple asserts that section 19717, subdivision (b)(1) requires only that it have pursued *an* administrative appeal on its refund claim, and contains no additional requirement that specific facts and issues must have been presented in that appeal. Apple also notes that paragraph 42 of

a litigant shall not be treated as the prevailing party "if the State of California establishes that its position in the proceeding was substantially justified." (§ 19717, subd. (c)(2)(B)(i).) "Substantially justified" has been construed to mean " 'not necessarily a prevailing position' but one which is ' "justified to a degree that would satisfy a reasonable person" or . . . has a " 'reasonable basis both in law and in fact.' " [Citations.]' [Citation.]" (*Lennane v. Franchise Tax Bd.* (1996) 51 Cal.App.4th 1180, 1188–1189 [59 Cal.Rptr.2d 602].)

The trial court stated in its final statement of decision that "FTB's interpretation of . . . § 24425 stretches the meaning of 'allocable' beyond a reasonable construction." Nevertheless, the court also found that FTB's position in the litigation was substantially justified.

Apple insists that FTB could not be substantially justified in pursuing the "fungibility of money" argument, because it took a position "repeatedly rejected" by the SBE and the courts. It urges that an award of attorney fees is necessary "as a disincentive to the FTB to take positions that it cannot substantially justify." (*Fujitsu, supra,* 120 Cal.App.4th at p. 488.)

Apple overstates the significance of the principal case authorities upon which it relies. For example, Apple contends that the Supreme Court decision in *Hunt-Wesson, supra,* 528 U.S. 458, is both directly applicable to this case and dispositive of the "fungibility of money" argument. It is not. In *Hunt-Wesson,* the Supreme Court rejected FTB's attempt to extend the theory in order to deny interest expense deductions incurred with respect to a *nonunitary* business operation. The court found that the effect was to assess a tax upon constitutionally protected nonunitary income. (*Id.* at p. 466.) Failing to make "a reasonable allocation of expense deductions to the income that the expense generates" was held to constitute "impermissible taxation of income outside [of our state's] jurisdictional reach." (*Id.* at p. 468.) The high court did not, however, reject "reasonable efforts properly to allocate a deduction between taxable and tax-exempt income" (*id.* at p. 466), and it specifically noted with approval both federal and state use of "ratio-based formulas" to allocate borrowing (*id.* at p. 467). The court did not disapprove the concept of "fungibility of money," but rather rejected an absolutist application that "pushes this concept past reasonable bounds." (*Id.* at p. 466.) In this case,

the parties' joint stipulation recites that "APPLE exhausted all applicable administrative remedies." Since we find that the trial court did not abuse its discretion in denying fees, it is unnecessary for us to address these questions.

For the same reason, we also do not address FTB's argument that Apple's fees are "greatly inflated," nor its contention that Apple failed to establish the "special factor" required to justify a higher hourly rate than the $125 per hour allowed under section 19717, subdivision (c)(1)(B)(iii).

FTB applied a ratio-based formula, consistent with *Hunt-Wesson,* to allocate Apple's borrowing. Its effort to make the allocation here failed not because its suggested ratios were inherently unreasonable, but because Apple succeeded in meeting its burden of demonstrating that allocation was not appropriate in this instance.

Likewise, Apple attempts to draw too much from the SBE's holding in *Zenith.* Far from outright rejecting FTB's indirect allocation formula for apportioning deductible expenses, the SBE held that "[u]nless the taxpayer can establish its dominant purpose and a sufficiently direct relationship between the expense and the income, [*FTB's*] *allocation formula* will provide the best means to allocate interest expense between taxable and nontaxable activities."[31] (*Zenith, supra,* Cal.Tax Rptr. (CCH) ¶ 402-965, p. 28,992 [1998 Cal. Tax Lexis 1 at p. *14], italics added.)

Among other reasons, the trial court found FTB's position was substantially justified and that it was not unreasonable or frivolous because it did not contravene any binding authority. It similarly rejected Apple's contention that *Hunt-Wesson* was dispositive, and recognized and accepted *Zenith*'s holding that FTB's indirect allocation formula could still be used where the taxpayer failed to establish the dominant purpose of its borrowing either through direct tracing or by consideration of the totality of facts and circumstances. But because Apple had successfully demonstrated direct allocation, the court found that here there was "[no] need to use FTB's indirect allocation formula."

We find no abuse of discretion in the court's denial of fees under section 19717.

2. *Code of Civil Procedure Section 1021.5*

Section 19717 is not the exclusive means or measure of attorney fees in a tax refund action. (*Northwest Energetic Services, LLC v. California Franchise Tax Bd.* (2008) 159 Cal.App.4th 841, 875 [71 Cal.Rptr.3d 642] (*Northwest Energetic*).) Code of Civil Procedure section 1021.5 provides in relevant part: "a court may award attorneys' fees to a successful party . . . in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of

[31] The SBE also observed that "[e]ach party presents valid arguments in support of its position, and each argument is founded upon meritorious considerations." (*Zenith, supra,* Cal.Tax Rptr. (CCH) ¶ 402-965, p. 28,992 [1998 Cal. Tax Lexis 1 at p. *13].)

persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." "Whether to award fees under this statute is [again] a matter within the trial court's discretion and will not be disturbed on appeal absent a showing of abuse of that discretion." (*Flannery v. California Highway Patrol* (1998) 61 Cal.App.4th 629, 634 [71 Cal.Rptr.2d 632] (*Flannery*).)

The statute specifically requires that the action result in a significant benefit to the general public or a large class of persons. Its purpose is to provide an incentive for " 'the plaintiff who acts as a true private attorney general, prosecuting a lawsuit that enforces an important public right and confers a significant benefit, despite the fact that his or her own financial stake in the outcome would not by itself constitute an adequate incentive to litigate.' [Citation.]" (*Flannery, supra*, 61 Cal.App.4th at p. 635; see *Northwest Energetic, supra*, 159 Cal.App.4th at pp. 873–874.) "The trial court must determine the significance of the benefit and the size of the class receiving that benefit by realistically assessing the gains that have resulted in a particular case. [Citation.]" (*Flannery*, at p. 635.)

The trial court found that Apple failed to show that the ruling in its favor had provided a significant benefit to the public or a large class of persons. "At most the ruling is only beneficial to those corporations, like Apple, who conduct business in both California and abroad, record profits from their non-United States subsidiaries and engage in borrowings in California that are not 'allocable' to those overseas profits. I have no idea how many such businesses there are and, of that unknown number, how many could or would benefit from the decision on the interest expense issue. . . . Moreover, . . . I perceive nothing inappropriate or unfair about requiring Apple [to bear its own litigation attorney fees]."

"When the record indicates that the primary effect of a lawsuit was to advance or vindicate a plaintiff's personal economic interests, an award of fees under [Code of Civil Procedure] section 1021.5 is improper. [Citations.]" (*Flannery, supra*, 61 Cal.App.4th at p. 635.) As we observed in *Northwest Energetic*, few tax refund actions will meet the standards of Code of Civil Procedure section 1021.5. (*Northwest Energetic, supra*, 159 Cal.App.4th at p. 875.)

We find no abuse of discretion in denial of fees under Code of Civil Procedure section 1021.5.

## III. DISPOSITION

The judgment is affirmed. The parties will bear their own costs.

Jones, P. J., and Simons, J., concurred.

A petition for a rehearing was denied October 5, 2011, and the petition of appellant Apple, Inc., for review by the Supreme Court was denied January 4, 2012, S197381. Chin, J., did not participate therein.