Filed 1/5/15  Bertoli v. Dennis CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CHRISTIAN BERTOLI et al., <br><br>     Plaintiffs and Appellants, <br><br> v. <br><br> JANET Q. DENNIS et al., <br><br>     Defendants and Respondents. | A137221 <br><br> (Mendocino County Super. Ct. No. SCUK-CVG-10-56629) |
| CHRISTIAN BERTOLI et al., <br><br>     Plaintiffs and Respondents, <br><br> v. <br><br> WILLIAM MOORES et al., <br><br>     Defendants and Appellants. | A137786 <br><br> (Mendocino County Super. Ct. No. SCUK-CVG-10-56629) |

In 2010, Pro Solutions, a debt collection agency owned by Janet Dennis and Jack Dennis, recorded assessment liens on behalf of the Irish Beach Clusterhomes Association against 12 homeowners in the common interest development.[1]  Contesting the validity of the assessments, the Homeowners sued Pro Solutions, and developers William Moores

_____

[1] The homeowners are Christian Bertoli, Patricia Bertoli, Michael Farrell, Dean Freedlun, Susan Freedlun, Kent Keebler, Sandra Trujillo, Mark Walker, Deborah Walker, Gayle Arrowood Weaver, Lynne Weaver, and Thomas Weaver.  We refer to them collectively hereafter as the Homeowners.  Janet Dennis, Jack Dennis (doing business as Pro Solutions), and their employee Jessica Koller are hereafter referred to collectively as Pro Solutions.

1

and Tona Moores for, inter alia, declaratory relief.[2]  The trial court granted a motion for judgment on the pleadings filed by Pro Solutions and joined by the Moores.

The Homeowners appeal from the judgment, arguing that the trial court erred in concluding that their first amended complaint (FAC) pled no valid cause of action and, in the alternative, that the trial court abused its discretion by denying leave to amend. (Appeal No. A137221.)  The Moores also appeal from the trial court's postjudgment order denying their motion for attorney fees.  (Appeal No. A137786.)  On our own motion, we have ordered the two appeals consolidated.  We agree with the Homeowners that their FAC stated a cause of action for declaratory relief.  Accordingly, we reverse the judgment, in part, and dismiss the Moores' appeal as moot.

## I. LEGAL BACKGROUND

The Davis-Stirling Common Interest Development Act (the Davis-Stirling Act or the Act)[3] "consolidated the statutory law governing condominiums and other common interest developments.  Under the Act, a common interest development is created 'whenever a separate interest coupled with an interest in the common area or membership in [an] association is, or has been, conveyed' and a declaration, a condominium plan, if one exists, and a final or parcel map are recorded.  (§ 1352.)  Common interest developments are required to be managed by a homeowners association (§ 1363, subd. (a)), defined as 'a nonprofit corporation or unincorporated association created for the purpose of managing a common interest development' (§ 1351, subd. (a)), which homeowners are generally mandated to join.  [Citation.]" (*Villa De Las Palmas Homeowners Assn. v. Terifaj* (2004) 33 Cal.4th 73, 81, fn. omitted.)  "The declaration,

_____

[2] To avoid confusion, and intending no disrespect, reference to individual members of the Moores family shall be by first name.  William and Tona are hereafter referred to collectively as the Moores.

[3] In 2012, at the time the motions for judgment on the pleadings were considered, the Davis-Stirling Act was found at Civil Code former section 1350 et seq.  The Act was later repealed and, operative in 2014, reenacted as Civil Code section 4000 et seq.  All further undesignated statutory references are to the Act's former code sections in effect at the time of judgment in this matter.

which is the operative document for the creation of any common interest development, is a collection of covenants, conditions and servitudes that govern the project.  [Citations.]" (*Nahrstedt v. Lakeside Village Condominium Assn.* (1994) 8 Cal.4th 361, 372.)

The Davis-Stirling Act also requires an association to "levy regular and special assessments sufficient to perform its obligations under the governing documents and [the Act]."  (§ 1366, subd. (a).)  Such an assessment "becomes a debt of the owner when the assessment is levied by the . . . association.  [Citation.]  'The debt is only a personal obligation of the owner, however, until the community association records a "notice of delinquent assessment" against the owner's interest in the development.  Recording this notice creates a lien and gives the association a security interest in the lot or unit against which the assessment was imposed.'  [Citations.]" (*Diamond Heights Village Assn., Inc. v. Financial Freedom Senior Funding Corp.* (2011) 196 Cal.App.4th 290, 300–301; § 1367.1, subds. (a), (d).)  Before an association may record a lien upon the separate interest of an owner to collect a debt which is past due, "the association shall notify the owner of record in writing by certified mail of . . . : [¶] (1) A general description of the collection and lien enforcement procedures of the association and the method of calculation of the amount, a statement that the owner of the separate interest has the right to inspect the association records . . . and the following statement in 14-point boldface type, if printed, or in capital letters, if typed:  'IMPORTANT NOTICE:  IF YOUR SEPARATE INTEREST IS PLACED IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR ASSESSMENTS, IT MAY BE SOLD WITHOUT COURT ACTION.' [¶] (2) An itemized statement of the charges owed by the owner . . . ." (§ 1367.1, subd. (a).)  An assessment lien may be enforced "in any manner permitted by law," including judicial or nonjudicial foreclosure, at least 30 days after the lien is recorded.  (§ 1367.1, subd. (g).)

## II. FACTUAL AND PROCEDURAL BACKGROUND[4]

The Homeowners own improved lots in a common interest development known as "Unit 8," in Irish Beach, Mendocino County. The entire property was originally owned by the Moores. After the Moores subdivided it, the development was to be governed by a homeowners association, entitled the Irish Beach Clusterhomes Association (Association), and conditions, covenants and restrictions (CC&Rs) recited in recorded declarations against each property within the subdivision. The Association, however, held no formal meetings from its inception, in 1980, through 1997 and had no budgets or assessments through 2003.

There are 16 lots in the development, as well as a common area. Ten unimproved lots are owned by the Moores or their daughter, Jessica Olson. Six homes were built on the remaining lots. The Moores kept one and sold the five remaining developed lots.

### The Prior Litigation

In 2003, a fire destroyed two homes in the development, one owned by the Moores and the other by appellants Farrell and his wife, Trujillo. Although the Association was moribund, William informally asked Farrell to act as president of the Association to pursue an insurance claim on its behalf. Farrell did so, but tensions arose, causing two factions to form: one comprised of the Moores and Olson, the other comprised of the remaining homeowners. In May and June 2004, at meetings attended only by the Moores and Olson, 11 votes were cast (one for their home and their 10 vacant lots) to elect the Irish Clusterhomes Association Board of Governors (Board of Governors) and William as its president. Certain assessments were also levied.

---

[4] The underlying facts in this case are taken from the allegations of the FAC, as well as the documents referenced and attached thereto and any facts which we may judicially notice. In order to provide context, we take portions of our statement of facts from, and take judicial notice of, the record and opinion of a prior appeal involving some of the same parties (*Irish Beach Clusterhomes Association Board of Governors v. Farrell* (Jan. 21, 2009, A120147, A121049) [nonpub. opn.] (*Irish Beach Board of Governors*)).

In March 2005, the Board of Governors and William, purporting to act as its president, sued Farrell and Trujillo to collect assessments imposed by the Association (2005 Complaint), as well as to obtain a judicial declaration of the parties' rights to manage and operate the Association.

Farrell, who disputed William's authority to act on behalf of the Association, filed a cross-complaint (2005 Cross-Complaint) against the Board of Governors and the Moores in their individual capacities. The 2005 Cross-Complaint alleged three causes of action. The first sought a declaration that the Board of Governors had not operated the Association properly under applicable law. The second sought injunctive relief to force the Board of Governors to properly manage the Association. The third was against William and Tona personally and alleged that they had breached their fiduciary duties.

The case came to trial before the Honorable Lloyd Von Der Mehden. The primary issue at trial was whether actions taken at the May and June 2004 meetings were valid, including whether the Board of Governors had been duly elected. That question turned on who had the right to vote. Judge Von Der Mehden interpreted the Association's CC&Rs and by-laws and concluded that only lots that had been improved with a home were entitled to vote. Applying that methodology, the court ruled the actions taken at the May and June 2004 meetings were invalid. Accordingly, the court ruled that the "plaintiffs" were to take nothing on their complaint and that the "cross-defendants" were enjoined from imposing any assessments against Farrell. The court also ruled that William individually had breached his fiduciary duties to the Association, but awarded only nominal damages of $1.

The Board of Governors and William, acting as its president, filed the *Irish Beach Board of Governors* appeal in which they argued the trial court interpreted the Association's governing documents incorrectly when it ruled that only those lots that had been improved with a home were entitled to vote. We did not reach the issue, however, because it was conceded on appeal, that the Board of Governors was not a legal entity capable of bringing or defending suit. Accordingly, we held that the judgment was void "to the extent it [was] in favor of or against the 'Irish Beach Clusterhomes Association

5

Board of Governors' and 'William Moores, President.' " We also observed that William was sued "in his individual capacity" in the breach of fiduciary duty cause of action in the 2005 Cross-Complaint. With respect to Farrell's remaining two causes of action for declaratory and injunctive relief, we said, "the allegations in the cross-complaint are vague and it does not appear that they were directed against Moores in his individual capacity."

*Events After Our Prior Opinion*

At some point after *Irish Beach Board of Governors* was filed, the Association imposed additional assessments against the improved lots. When the assessments went unpaid by the Homeowners, William, acting as "Chairman" of the Association, hired Pro Solutions to collect what the Homeowners alleged to be "unauthorized and invalid" assessments. Pro Solutions, acting as collections agent for the Association, sent notices to each of the Homeowners of the Association's intent to lien. The notices detailed the Association's itemized statement of the amounts owed. The notices further stated: "If your separate interest is placed in foreclosure because you are behind in your assessments, it may be sold without court action. [¶] Failure to receive your full payment (or arrange for a payment plan) by the date indicated will result in a Notice of Lien Assessment (Lien) being sent to the County Recorder on the next working day without further notice to you." (Boldface & capitalization omitted.)

The Homeowners protested the debt collection attempts and asserted to Pro Solutions, through counsel, that the Association was not a legally existing entity and that Pro Solutions had no legal authority to collect debts on its behalf. Despite the Homeowners' protest, Pro Solutions persisted in its collection efforts and filed notices of lien assessments against the Homeowners' properties. The notices provided: "[T]he Association hereby designates Pro Solutions . . . the Agent/Trustee authorized by the Association to enforce said assessment lien by sale of the property in accordance with the Declaration and all applicable provision[s] of the law of the State of California . . . ."

6

*The Current Litigation*

On July 21, 2010, the Homeowners filed a complaint against Pro Solutions based on its attempts to collect the assessments despite having been warned that the Association "did not exist." The complaint asserted causes of action for abuse of process, intentional infliction of emotional distress, slander of title, and unfair business practices. The Homeowners also sought declaratory and injunctive relief.

Pro Solutions filed a cross-complaint against the Association for indemnity. William was also added as a cross-defendant. Pro Solutions also successfully moved for an order joining the Association, the Moores, and Olson as indispensable parties to the Homeowners' complaint.

The Homeowners filed the FAC, in which they alleged that the *Irish Beach Board of Governors* opinion determined that the Association did not exist. The Homeowners further alleged: "By Judicial Decree, the Association no longer exists, and as such, is without the power to levy assessments on the properties within the Subdivision. [¶] . . . There has never been a valid vote of the owners within the Subdivision to reconstitute the Association and thus, the Association no longer exists by such judicial holding. [¶] . . . Any actions taken by the Association or assessments levied by the Association are invalid and unenforceable. [¶] . . . The nonexistent Association continued to operate and attempted to levy assessments on the Subdivision properties in spite of the court ruling that the Association did not exist."

The FAC also added a seventh cause of action, for declaratory relief, against the Moores, Olson, and the Association, in addition to Pro Solutions.[5] Specifically, the Homeowners alleged in the seventh cause of action: "[T]he assessments which Defendants seek to collect are invalid because the Association no longer exists, and that by the principals [*sic*] of res judicata and collateral estoppel [the Moores] and [Olson], as individual owners of unimproved lots without structures, have no right to vote under the

---

[5] Pro Solutions also filed a first amended cross-complaint seeking indemnity from the Association and William.

[CC&Rs], whereas Defendants . . . dispute this contention and contend that the assessments are valid and enforceable and will attempt to foreclose on Plaintiffs' real properties if the assessments are not paid." Accordingly, the Homeowners sought "a declaration of the rights and duties of the parties, including a declaration that the assessments Defendants seek to collect are invalid and that owners of unimproved lots have no rights to vote by earlier decision."

The Moores filed a demurrer and, as did Pro Solutions, a motion to strike the FAC, all of which were denied. After its answer was filed, Pro Solutions filed a motion for judgment on the pleadings, asserting that all of the Homeowners' causes of action were barred by the litigation privilege. The Honorable Diane Elan Wick denied the motion without further comment.

However, in March 2012, the Association and Olson demurred to the seventh cause of action, asserting that our *Irish Beach Board of Governors* opinion contradicted the Homeowners' allegation that the Association does not exist. The Honorable Richard J. Henderson agreed and sustained the demurrer with leave to amend. Specifically, Judge Henderson wrote: "There is a clear contradiction between the allegations in the [FAC] that the appellate court determined that 'the Association no longer exists' and the specific language of the attached appellate decision. That contradiction renders the seventh cause of action uncertain, ambiguous and unintelligible. [¶] . . . [¶] . . . [T]he complaint fails to identify the judgment, order or ruling underlying any claim of res judicata or estoppel or otherwise explain how the application of those judicial principles might affect the voting rights of [Olson]. [Olson] was not a party to the matter before the appellate court. The appellate decision which superseded the trial court decision did not contain any analysis or determination regarding [her] voting rights." The Homeowners did not amend their allegations against the Association and Olson, and judgment was entered in their favor.[6]

---

[6] The Homeowners also did not appeal the judgment in favor of the Association and Olson. Neither Olson nor the Association are parties to the instant appeals.

8

Thereafter, Pro Solutions filed another motion for judgment on the pleadings, in which the Moores joined. Pro Solutions contended that, with respect to the seventh cause of action, Judge Henderson's demurrer ruling applied equally to it and that all other causes of action were barred by the litigation privilege and statute of limitations. Judge Henderson took judicial notice of the recorded CC&Rs, the notice of liens, as well as our *Irish Beach Board of Governors* opinion, the 2005 Complaint, the 2005 Cross-Complaint, the 2007 Judgment, and Judge Von Der Mehden's statement of decision. The motion for judgment on the pleadings was granted without leave to amend.

Judge Henderson reasoned that the Homeowners' FAC was insufficient to state a cause of action because: (1) the *Irish Beach Board of Governors* decision did not make any determination regarding the legal existence of the Association; (2) "The only references in the general allegations to voting rights within the homeowners association are found in Paragraphs 11 and 15 and are insufficient to put a reasonable person on notice of a claim that either the [A]ssociation had been improperly formed or that the assessments were invalid due to voting irregularities involving the Moores family"; and (3) "whatever findings [Judge Von Der Mehden] may have made regarding the voting rights of the Moores family must be limited to the only entity that was a party to that action: the . . . Board of Governors." Judge Henderson also concluded that the conduct underlying the first four causes of action was protected by the litigation privilege. Judgment was entered against the Homeowners and in favor of the Moores and Pro Solutions. The Homeowners filed a timely notice of appeal from the judgment (appeal No. A137221).

*Motion for Attorney Fees*

The Moores moved for an award of attorney fees, arguing that "because [they] successfully defended the [Homeowners'] attempts to strip their voting rights . . . , the Moores are entitled to their attorney fees . . . pursuant to . . . [section] 1354" and an

attorney fees provision of the CC&Rs.[7]  Judge Henderson determined that "the action was primarily brought to construe and enforce an appellate court decision" and denied the motion.  The Moores filed a timely notice of appeal (appeal No. A137786).

### III.  DISCUSSION

On appeal from the judgment, the Homeowners challenge Judge Henderson's conclusion that they did not state a valid cause of action for declaratory relief against the Moores and Pro Solutions.  Specifically, the Homeowners contend that (1) Judge Henderson misconstrued our *Irish Beach Board of Governors* opinion; (2) the doctrine of collateral estoppel applies to Judge Von Der Mehden's finding regarding voting rights; and (3) the FAC sufficiently raised the Moores' inability to vote as an alternate basis for invalidating the assessments.[8]  The Homeowners also argue that their first through fourth causes of action are not barred by the litigation privilege.  In the alternative, the Homeowners contend that, if the FAC was defective, Judge Henderson abused his discretion in denying leave to amend.

In their appeal from the postjudgment order denying attorney fees, the Moores contend that they are entitled to attorney fees, under both section 1354 and contract,

---

[7] Section 1354 provides, in relevant part:  "(a) The covenants and restrictions in the declaration shall be enforceable equitable servitudes, unless unreasonable, and shall inure to the benefit of and bind all owners of separate interests in the development.  Unless the declaration states otherwise, these servitudes may be enforced by any owner of a separate interest or by the association, or by both. [¶] . . . [¶] (c) *In an action to enforce the governing documents*, the prevailing party shall be awarded reasonable attorney's fees and costs."  (Italics added.)

[8] We reject the argument of the Moores and Pro Solutions that the Homeowners' instant appeal was forfeited when they failed to appeal the dismissal of Olson and the Association.  They cite no authority supporting the proposition that the Homeowners are required to engage in further litigation against the Association and Olson in order to preserve their right to proceed against the Moores and Pro Solutions.  We are aware of no such authority.  Assuming that the Association and Olson are indispensible parties, their absence " 'does not deprive a court of the power to make a legally binding adjudication between the parties properly before it.' [Citation.]" (*Golden Rain Foundation v. Franz* (2008) 163 Cal.App.4th 1141, 1155.)

"[b]ecause [their] litigation efforts prevented [the Homeowners] from extinguishing the Association and preserved 'unimproved' lot owners' right to vote under the Association's governing documents." As this argument appears to concede, the FAC adequately alleges the existence of an actual controversy regarding Association voting rights. Accordingly, the trial court erred, in part, in granting judgment on the pleadings.

A.    *Standard of Review*

"A motion for judgment on the pleadings is analogous to a general demurrer, but is made after the time to file a demurrer has expired. (Code Civ. Proc., § 438, subd. (f)(2); *Ludgate Ins. Co. v. Lockheed Martin Corp.* (2000) 82 Cal.App.4th 592, 602.) The trial court's judgment on the order granting a motion for judgment on the pleadings is reviewed independently under the de novo standard of review. [Citation.] '[W]e treat the properly pleaded allegations of [the] complaint as true, and also consider those matters subject to judicial notice. [Citations.] "Moreover, the allegations must be liberally construed with a view to attaining substantial justice among the parties." [Citation.] "Our primary task is to determine whether the facts alleged provide the basis for a cause of action against defendants under any theory." [Citation.]' [Citations.]" (*International Assn. of Firefighters Local 230 v. City of San Jose* (2011) 195 Cal.App.4th 1179, 1196, parallel citation omitted.) "We may also take notice of exhibits attached to the complaints. If facts appearing in the exhibits contradict those alleged, the facts in the exhibits take precedence." (*Holland v. Morse Diesel Internat., Inc.* (2001) 86 Cal.App.4th 1443, 1447, superseded on other grounds as stated in *White v. Cridlebaugh* (2009) 178 Cal.App.4th 506, 521.)

With respect to determining whether a pleading states a cause of action under Code of Civil Procedure section 1060, we exercise independent review.[9] (*Environmental*

---

[9] "Any person interested under a written instrument . . . or who desires a declaration of his or her rights or duties with respect to another, or in respect to, in, over or upon property . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action or cross-complaint in the superior court for a declaration of his or her rights and duties in the premises, including a

11

*Defense Project of Sierra County v. County of Sierra* (2008) 158 Cal.App.4th 877, 885.) When an actual controversy does exist, Code of Civil Procedure section 1061 gives the trial court discretion to "refuse to [grant declaratory relief] in any case where its declaration or determination is not necessary or proper at the time under all the circumstances." If a trial court determines that an actual controversy does not warrant declaratory relief, we review that determination for an abuse of discretion. (*Meyer v. Sprint Spectrum L.P.* (2009) 45 Cal.4th 634, 647; *Osseous Technologies of America, Inc. v. DiscoveryOrtho Partners LLC* (2010) 191 Cal.App.4th 357, 367.) "The discretion to refuse to entertain an action in declaratory relief vested in the trial court by [Code of Civil Procedure] section 1061 is not unlimited. It may be exercised only when there is a basis in fact for the conclusion that the declaration is not necessary or proper. [Citations.]" (*Warren v. Kaiser Foundation Health Plan, Inc.* (1975) 47 Cal.App.3d 678, 683.)

Where a demurrer is sustained or a motion for judgment on the pleadings is granted, the trial court's denial of leave to amend is reviewed for abuse of discretion. (*Rodriguez v. County of Los Angeles* (2013) 217 Cal.App.4th 806, 810.) " '[T]o meet the plaintiff's burden of showing abuse of discretion, the plaintiff must show how the complaint can be amended to state a cause of action. [Citation.] However, such a showing need not be made in the trial court so long as it is made to the reviewing court.' [Citations.]" (*Dudley v. Department of Transportation* (2001) 90 Cal.App.4th 255, 260.)

B.     *Seventh Cause of Action for Declaratory Relief*

The Homeowners argue that Judge Henderson erred in dismissing their seventh cause of action for declaratory relief. " 'All that Code of Civil Procedure section 1060 requires is that there be [an] "actual controversy relating to the legal rights and duties of

---

determination of any question of construction or validity arising under the instrument or contract. He or she may ask for a declaration of rights or duties, either alone or with other relief; and the court may make a binding declaration of these rights or duties, whether or not further relief is or could be claimed at the time. The declaration may be either affirmative or negative in form and effect, and the declaration shall have the force of a final judgment. The declaration may be had before there has been any breach of the obligation in respect to which said declaration is sought." (Code Civ. Proc., § 1060.)

the respective parties." . . . A cardinal rule of pleading is that only the ultimate facts need be alleged. [Citation.] In a declaratory relief action, the ultimate facts are those facts establishing the existence of an actual controversy. (Code Civ. Proc., § 1060.) . . . However, to be entitled to declaratory relief, a party need not establish that it is also entitled to a favorable judgment. . . . "A complaint for declaratory relief is legally sufficient if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the parties under a written instrument or with respect to property and requests that the rights and duties of the parties be adjudged by the court. [Citations.] If these requirements are met and no basis for declining declaratory relief appears, the court should declare the rights of the parties whether or not the facts alleged establish that the plaintiff is entitled to [a] favorable declaration. [Citations.]" ' [Citation.]" (*Market Lofts Community Assn. v. 9th Street Market Lofts, LLC* (2014) 222 Cal.App.4th 924, 931.)

In the statement of decision, Judge Henderson wrote: "The gravamen of the . . . FAC is that the appellate court had determined by 'judicial decree' that the *Association* no longer existed and was without the power to levy assessments on the [Homeowners'] properties. . . . [The Homeowners] did not allege in the FAC any basis for the alleged invalidity of the Association *other than* the effect of the 'judicial decree.' " (Fns. omitted.) In our view, the Homeowners' claim for declaratory relief is more accurately described as seeking a declaration that *the assessments are invalid* on two alternative grounds: (1) "because the Association no longer exists"; and (2) "that by the principles of res judicata and collateral estoppel [the Moores and Olson], as individual owners of unimproved lots without structures, have no right to vote under the CC&Rs . . . ." We address each basis in turn, keeping in mind that "to the extent the factual allegations conflict with the content of the exhibits to the complaint, we rely on and accept as true the contents of the exhibits and treat as surplusage the pleader's allegations as to the legal effect of the exhibits. [Citations.]" (*Barnett v. Fireman's Fund Ins. Co.* (2001) 90 Cal.App.4th 500, 505.)

13

1. *Existence of the Association*

First, the Homeowners allege that the assessments should be declared invalid because "the Association no longer exists" by virtue of our *Irish Beach Board of Governors* opinion. We agree with Judge Henderson that the allegation is flatly contradicted by that prior opinion.[10] We stated, in the factual and procedural background, that the Association was moribund. However, moribund means "being in a state of inactivity or obsolescence." (Merriam-Webster Online Dict. <http://www.merriam-webster.com/dictionary/moribund> [as of Dec. 22, 2014].) In the discussion section of the prior opinion, we only observed: "[B]oth parties now concede that the Irish Beach Clusterhomes Association *Board of Governors* is not a legal entity that is capable of bringing suit." (Italics added.)

2. *Collateral Estoppel*

In their seventh cause of action, the Homeowners also alleged that the assessments should be declared invalid because the Moores and Pro Solutions are estopped from challenging Judge Von Der Mehden's finding that owners of unimproved lots have no right to vote under the CC&Rs. Judge Henderson appears to have found this allegation to be contradicted by our *Irish Beach Board of Governors* opinion, the 2005 Complaint, the 2005 Cross-Complaint, and Judge Von Der Mehden's statement of decision. Judge Henderson wrote: "[W]hatever findings [Judge Von Der Mehden] may have made regarding the voting rights of the Moores family must be limited to the only entity that

_____

[10] We do not address Pro Solutions's argument that the Association reconstituted itself after the *Irish Beach Board of Governors* decision. The limited role of a motion for judgment on the pleadings is to test the legal sufficiency of the operative complaint. (*Donabedian v. Mercury Ins. Co.* (2004) 116 Cal.App.4th 968, 994.) The FAC specifically alleged that "[t]here has never been a valid vote of the owners . . . to reconstitute the Association," and there is no matter properly subject to judicial notice contradicting this allegation. " 'The hearing on demurrer may not be turned into a contested evidentiary hearing through the guise of having the court take judicial notice of documents whose truthfulness or proper interpretation are disputable.' [Citations.]" (*Silguero v. Creteguard, Inc.* (2010) 187 Cal.App.4th 60, 64 [denying request for judicial notice of deposition testimony].)

was a party to that action:  the . . . Board of Governors.  The Association was not a party . . . .  Finally, the scope of the appellate court opinion must be construed to include the trial court's determination regarding voting rights in the homeowners group.  The appellate court declared the [2007 judgment] was void to the extent it was in favor of or against the [Board of Governors] and [William] in his capacity as president.  The *only* cause of action to survive that sweeping determination of invalidity was the third cause of action of the cross-complaint seeking monetary damages for breach of fiduciary duty against [William] in his capacity as developer.  The trial court determination regarding voting rights were not essential or even relevant to that determination."

The Homeowners contend that Judge Von Der Mehden's finding regarding voting rights is binding on the Moores and Pro Solutions under the doctrine of collateral estoppel.  Collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."  (*Ashe v. Swenson* (1970) 397 U.S. 436, 443.)  A party will be collaterally estopped from relitigating an issue " 'only if several threshold requirements are fulfilled.  First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding.  Second, this issue must have been actually litigated in the former proceeding.  Third, it must have been necessarily decided in the former proceeding.  Fourth, the decision in the former proceeding must be final and on the merits.  Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.  [Citation.]' [Citation.]"  (*Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 511.)  The burden of proving the requirements for application of the doctrine falls on the party asserting it.  (*First N.B.S. Corp. v. Gabrielsen* (1986) 179 Cal.App.3d 1189, 1194.)

The Homeowners argue:  "These factors all apply here:  the voting right of property owners was previously litigated, *resulting in a final judgment on the merits* (*not reversed on that point*) and Pro Solutions is in privity with [William], who was a party to the prior proceeding both in a representative and personal capacity."  (Italics added.)  The Homeowners maintain, "[T]he [*Irish Beach Board of Governors*] decision effected only a

15

partial reversal. It did not and could not reverse other issues decided in that case, including the requirement of an improved lot as a basis for voting rights." We disagree.

Judge Von Der Mehden decided the voting rights issue against the Board of Governors *and* against William, acting as president. However, as outlined above, we determined that "the judgment is void to the extent it is in favor of, or against" these same parties. "[A] void judgment will not operate as a bar to relitigation of the issues purportedly adjudicated. [Citations.]" (*Pajaro Valley Water Management Agency v. McGrath* (2005) 128 Cal.App.4th 1093, 1100, italics omitted; see also *Rochin v. Pat Johnson Manufacturing Co.* (1998) 67 Cal.App.4th 1228, 1239 ["[t]he doctrine of res judicata is inapplicable to void judgments"].) The Homeowners appear to concede as much.[11] Instead, they assert that the voting rights issue was also necessarily decided in the portion of Judge Von Der Mehden's judgment that remains undisturbed by *Irish Beach Board of Governors*.

It is clear from our *Irish Beach Board of Governors* opinion that the judgment against William, in his individual capacity, remains standing as a final judgment. In that opinion, we recognized repeatedly that "[William] was sued in his individual capacity in the cross-complaint" and that the third cause of action therein, alleging a breach of fiduciary duty, "was clearly directed at [William] in his individual capacity." As the only final judgment was that entered against William as an individual for breach of fiduciary duty, we must determine if the voting rights issue was "necessarily decided" therein.

---

[11] The authority relied on by the Homeowners does not suggest otherwise. (See *Ginsberg v. Gamson* (2012) 205 Cal.App.4th 873, 904–905 ["[t]he reviewing court will avoid ordering a retrial of all issues when some can 'be determined separately without prejudice to any party . . . to relieve the trial court and the parties of the unnecessary burden of relitigating issues that have been decided, and to respect and preserve the results of a trial on issues as to which the appellant has not shown error' "]; *Gray v. Cotton* (1913) 166 Cal. 130, 139 ["[t]he practice of reversing a judgment in part only is well settled . . . and should be followed where the error found to have been committed has affected the determination of but one or more of a greater number of distinct and severable issues or causes of action"].)

16

" 'The " 'necessarily decided' " requirement generally means only that the resolution of the issue was not " 'entirely unnecessary' to the judgment in the initial proceeding." [Citation.]' [Citation.]" (*Apple, Inc. v. Franchise Tax Bd.* (2011) 199 Cal.App.4th 1, 15; accord, *First N.B.S. Corp. v. Gabrielsen, supra,* 179 Cal.App.3d at p. 1196.) " ' " 'If "anything is left to conjecture as to what was necessarily involved and decided" there can be no collateral estoppel [citations] . . . .' [Citation.]" [Citation.]' [Citation.]" (*Shopoff & Cavallo LLP v. Hyon* (2008) 167 Cal.App.4th 1489, 1520.) " 'To establish a cause of action for breach of fiduciary duty, a plaintiff must demonstrate the existence of a fiduciary relationship, breach of that duty and damages.' [Citation.]" (*Id.* at p. 1509.) The directors of a homeowners association owe a fiduciary duty of undivided loyalty to the association, and may not make decisions for the association that benefit their own interests at the expense of the association and its members. (*Raven's Cove Townhomes, Inc. v. Knuppe Development Co.* (1981) 114 Cal.App.3d 783, 799.)

The allegations in Farrell's breach of fiduciary duty cause of action included no mention of the voting rights issue. Instead, Farrell alleged: "[William, as an original subdivider and director of the Association, was] obligated and required to act in a fiduciary capacity with respect [to] the property of the Association and the management of its affairs in an honest and good faith manner. Instead of so acting, [he] put [his] own interests in [the Moores'] individual lots above the interests of the Association *by causing the improved lots within the subdivision to be assessed for more than their fair share of the assessments,* so that the unimproved lots owned by [the Moores] were assessed for less than their fair share of the total cost of the operation of the Association." (Italics added.)

And, the voting rights issue was not mentioned by Judge Von Der Mehden in the portion of the statement of decision analyzing the breach of fiduciary duty cause of action. Instead, it was discussed in the analysis of the 2005 Complaint—causes of action decided against the Board of Governors and William, as president. In the statement of decision, Judge Von Der Mehden explained: "With reference to the assessments claimed by [the Board of Governors and William, as president], the court finds that such

17

assessments are not valid or enforceable . . . .  The subject assessments are based on the meetings of the same board of governors and president of the [Association] during 2004 and thereafter as stated above, and were therefore not valid acts for or on behalf of the [Association].  In addition, a budget or proposed budget and other fiscal records for the [Association] were not timely prepared or distributed to all members as required under the [Davis-Stirling Act] and the amendment to the [CC&Rs].  *Further,* in determining the basis and amount of the assessments, [the Moores] confused or commingled their own interests with the common interests of [the Association] including [Farrell and Trujillo] as homeowners and members.  In this regard, the determination and allocation of assessments as to parcels and unimproved lots, past and present, were disproportionate as to various septic system expenses, costs of insurance and other expenses.  Cross-defendants undertook to impose assessment through the [Association] for repairing or modifying a septic system that was originally installed improperly and without final permit approval . . . . [¶] . . . It is evident that [William] had a conflict of interest in regards to the [Association] and [Farrell and Trujillo].  [William] was the subdivider and developer of Unit 8; he was in control of the [Association] from its infancy *and he caused the board of governors, including himself, to be elected and himself to be elected as president of the* [*Association*].  Decisions were then made as noted above that benefitted his own interests at the expense of the [Association] and cross-complainant as a homeowner and member.  The court finds cross-defendant William Moores had a fiduciary duty owing to the [Association] and to cross-complainant as a homeowner and member, and that [William] breached such duty *by his various acts and omission that occurred in 2004 and thereafter* as referred to above . . . ."  (Italics added.)

Although the assessments at issue in the 2005 Cross-Complaint may have been imposed, at the May and June 2004 meetings, *after* William (as an unimproved lot owner) voted, a finding that he was not entitled to vote does not appear to have been necessary to show William's breach of his fiduciary duties.  We agree with Judge Henderson that resolution of the voting rights issue was unnecessary to the judgment against William as an individual.  Because we conclude that William is not estopped

18

from denying that unimproved lot owners cannot vote, we need not consider the Homeowners' further arguments that the findings were also binding on Pro Solutions by virtue of contractual privity or "the Association and all property owners in the development under *Duffey v. Superior Court* (1992) 3 Cal.App.4th 425." The Homeowners have not met their burden to show that the collateral estoppel doctrine applies.

3.      *Voting Rights Remain Undetermined*

If res judicata and collateral estoppel do not apply, it is implicit that an actual controversy exists between the parties regarding voting rights. Accordingly, the Homeowners contend that, even if Judge Henderson did not misconstrue the effect of the prior litigation, they did not fail to state a cause of action for declaratory relief on the voting rights issue. In the order granting the motion for judgment on the pleadings, Judge Henderson wrote: "[A] reasonable reading of the FAC fails to provide sufficient notice that the [the Homeowners'] allegations of the legal status of the Association are based on the additional claim that the Moores family was not entitled to vote . . . . The only references in the general allegations to voting rights within the [Association] are found in Paragraphs 11 and 15 and are insufficient to put a reasonable person on notice of a claim that either the [Association] had been improperly formed or that the assessments were invalid due to voting irregularities involving the Moores family.[12] The additional allegations in the Seventh Cause of action were limited to that cause of action alone and were not incorporated into any other cause of action."

This begs the question. Does the seventh cause of action—for declaratory relief—fail to state a cause of action? Paragraphs 11 and 15 were incorporated by reference into

---

[12] Paragraphs 11 and 15 of the FAC alleged: "The Superior Court interpreted the Association's CC&Rs and bylaws in favor of Farrell . . . and concluded that: (a) only lots that had been improved with a home were entitled to vote on Association matters; (b) the actions taken by the Association Board at the May and June 2004 meetings were invalid; and (c) the Association was enjoined from imposing any assessments against Farrell. [¶] . . . [¶] There has never been a valid vote of the owners within the Subdivision to reconstitute the Association, and thus, the Association no longer exists . . . ."

19

the seventh cause of action. And, in the seventh cause of action, the Homeowners further alleged: "An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning their respective rights and duties. Plaintiffs contend that the assessments which Defendant seek to collect are invalid because the Association no longer exists, and that by the principles of res judicata and collateral estoppel William Moores, Tona Moores, and Jessica Olson, as individual owners of unimproved lots without structures, have no right to vote under the CC&Rs, whereas Defendants and all of them dispute this contention and contend that the assessments are valid and enforceable and will attempt to foreclose on Plaintiffs' real properties if the assessments are not paid. [¶] A judicial declaration is necessary and appropriate at this time . . . in order that Plaintiffs and all parties containing an interest in any and all property governed by the [CC&Rs] may ascertain the rights and duties with regard to the [CC&Rs] and assessments issued by the Association . . . ." In their prayer for relief, the Homeowners sought "a declaration of the rights and duties of the parties, including a declaration that the assessments Defendants seek to collect are invalid and that owners of unimproved lots have no rights to vote by earlier decision."

The Homeowners, in their FAC, may have incorrectly focused on the prior litigation, but we agree with them that, liberally construed, the FAC provides sufficient notice that an actual controversy regarding voting rights remains. The Moores themselves concede as much. We conclude that the trial court erred in granting judgment on the pleadings on this cause of action.

C.   *Litigation Privilege and the First Four Causes of Action*

Finally, the Homeowners contend that the trial court erred in concluding that their first through fourth causes of action are barred by the litigation privilege.[13] In their first three causes of actions, the Homeowners sought damages against Pro Solutions, under various tort theories, for their recordation of liens to facilitate collection of the challenged

_____

[13] The Homeowners do not challenge the trial court's judgment with respect to their fifth and sixth causes of action.

20

assessments and communications preceding such liens. In their fourth cause of action, the Homeowners alleged: "[The Homeowners] contend that the assessments which [Pro Solutions] seek[s] to collect are invalid because the Association no longer exists, whereas [Pro Solutions] dispute[s] this contention and contend[s] that the assessments are valid and enforceable and will attempt to foreclose on [the Homeowners'] real properties if the assessments are not paid." Judge Henderson determined that all four causes of action were barred by the litigation privilege.

"A privileged publication or broadcast is one made [¶] . . . [¶] . . . in any . . . judicial proceeding . . . ." (Civ. Code, § 47, subd. (b).) The statute has been broadly construed, such that " 'communications preparatory to or in anticipation of the bringing of an action or other official proceeding are within the protection of the litigation privilege . . . .' [Citations.]" (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115.) " ' "The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." [Citation.] The privilege "is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." [Citation.]' [Citations.]" (*Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1485, italics omitted.)

The purpose of the litigation privilege is to afford litigants freedom of access to the courts without fear of being harassed by derivative tort actions. (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 213.) "Although originally designed to limit an individual's potential liability for defamation, the privilege has since been extended to apply to other torts," such as abuse of process, and intentional infliction of emotional distress. (*Feldman v. 1100 Park Lane Associates, supra,* 160 Cal.App.4th at pp. 1485–1486.)

"The litigation privilege, however, is not without limit." (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1242.) The Legislature has made clear that it does not intend the enforcement of a statute to be barred by the litigation privilege when the statute "is more specific than the litigation privilege and would be

21

significantly or wholly inoperable if its enforcement were barred when in conflict with the privilege." (*Id.* at p. 1246.) For instance, the litigation privilege does not bar claims based on conduct violating the Rosenthal Fair Debt Collection Practices Act (RFDCPA; Civ. Code, § 1788 et seq.). (*Komarova v. National Credit Acceptance, Inc.* (2009) 175 Cal.App.4th 324, 340 [debt collector frequently called plaintiff (whose name was similar to debtor's) without disclosing his identity, communicated with plaintiff's employer, and engaged in other harassing communication].) And "it is . . . well settled that the California litigation privilege does not apply to federal causes of action," including claims under the Fair Debt Collection Practices Act (FDCPA; 15 U.S.C. § 1692 et seq.). (*Oei v. North Star Capital Acquisitions, LLC* (C.D.Cal. 2006) 486 F.Supp.2d 1089, 1098.)

In *Wilton v. Mountain Wood Homeowners Assn.* (1993) 18 Cal.App.4th 565 (*Wilton*), our colleagues in Division Four held that the litigation privilege protects the publication of allegedly fraudulent assessment liens recorded by a homeowners association against a condominium unit. (*Id.* at pp. 567, 569.) In *Wilton,* the unit's owner sued the homeowners association for slander of title and then appealed from a judgment of dismissal after the homeowners association's demurrer was sustained without leave to amend. (*Id.* at pp. 567–568.)

The *Wilton* court noted: "Condominium homeowners associations must assess fees on the individual owners in order to maintain the complexes. [Citation.] When an owner defaults, the association may file a lien on the owner's interest for the amount of the fees. [Citation.] If the default is not corrected, the association may pursue any remedy permitted by law, including judicial foreclosure or foreclosure by private power of sale. [Citation.]" (*Wilton, supra,* 18 Cal.App.4th at p. 568; §§ 1366, subd. (a), 1367, subds. (b), (e).) Relying on *Frank Pisano & Associates v. Taggart* (1972) 29 Cal.App.3d 1, 25, the *Wilton* court determined that the publication of homeowners' assessment liens, like the filing of mechanic liens, was absolutely privileged under Civil Code section 47, subdivision (b), because the liens are " 'required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is

made outside the courtroom and no function of the court or its officers is invoked.' [Citation.]" (*Wilton,* at p. 569, fn. omitted.) However, the *Wilton* court made clear that its holding "*does not prevent* those who are subject to homeowners' assessment liens from seeking declaratory relief or filing quiet title actions to contest the validity of liens that are improper." (*Id.* at p. 571, italics added.)

We are not persuaded by the Homeowners' attempt to distinguish *Wilton* on the basis of the debt collection agency's involvement or conduct. Nonparties can invoke the litigation privilege. (*Tom Jones Enterprises, Ltd. v. County of Los Angeles* (2013) 212 Cal.App.4th 1283, 1295; *Foothill Federal Credit Union v. Superior Court* (2007) 155 Cal.App.4th 632, 635–636 [litigation privilege is not restricted to the actual parties to the lawsuit but applies to " 'litigants or other participants authorized by law' "].) The only tortious acts alleged by the Homeowners were Pro Solutions' recording notices of lien assessments and Pro Solutions' pre-lien notification to the Homeowners. They alleged: "Despite warnings of the illegitimate nature of the Association, [Pro Solutions] continue[d] to pursue collection efforts against [the Homeowners] on the fraudulent assessments and . . . filed Notices of Lien Assessment against [the Homeowners'] real properties."[14] Pro Solutions' actions were required or permitted by the Act in order to pursue foreclosure. (§§ 1367, 1367.1, subds. (a), (d), (g).) The Homeowners do not allege in their first four causes of action that Pro Solutions used threats, harassment, or other violations of the FDCPA or the RFDCPA. Following *Wilton*, we agree that the Homeowners' first, second, and third causes of action are barred by the litigation privilege. The Homeowners have not met their burden to show the possibility to amend the factual basis for their tort claims.

---

[14] Contrary to the Homeowners' argument, it is well established that the litigation privilege "is absolute in nature, applying 'to *all* publications, irrespective of their maliciousness.' [Citation.]" (*Action Apartment Assn., Inc. v. City of Santa Monica, supra,* 41 Cal.4th at p. 1241.) None of the authority relied on by the Homeowners suggests a contrary rule.

However, in determining that the Homeowners' cause of action for declaratory relief against Pro Solutions was barred by the litigation privilege, the trial court erred. (*Wilton, supra,* 18 Cal.App.4th at p. 571.)  The trial court erred in granting the motions for judgment on the pleadings with respect to the two declaratory relief causes of action. We therefore reverse the judgment with respect to those causes of action.  Our conclusion moots the Moores' appeal from the order denying attorney fees.

## IV. DISPOSITION

In appeal No. A137221, we reverse only that portion of the judgment sustaining the motion for judgment on the pleadings as to the fourth and seventh causes of action for declaratory relief.  Appeal No. 137786 is dismissed as moot.  The parties are to bear their own costs on appeal.

_____

BRUINIERS, J.

WE CONCUR:

_____

SIMONS, Acting P. J.

_____

NEEDHAM, J.