Filed 5/4/21  H.T.L. Properties v. Speck CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| H.T.L. PROPERTIES, LLC et al., | B299160 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC677442) |
| v. | |
| JAMES SPECK et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Michael P. Vicencia, Judge.  Affirmed in part and dismissed in part.

McCreary and Duncan J. McCreary for Plaintiffs and Appellants.

Ferruzzo & Ferruzzo, Gregory J. Ferruzzo and Jillian P. Harris for Defendants and Respondents.

_____

This litigation arises out of a dispute between certain entities and individuals concerning the use of a large electronic sign in the City of Long Beach to advertise car dealerships in the area. When plaintiffs and appellants H.T.L. Properties, LLC (HTL Properties) and HTL Automotive, Inc. (HTL Automotive), were denied use of the sign, they filed a lawsuit against defendants and respondents James Speck (Speck), Circle Automotive Group, Inc. (Circle Auto), and Electra Media, Inc. (EMI),[1] claiming that defendants wrongfully denied them use of the sign. Defendants successfully moved for summary judgment, and HTL Properties and HTL Automotive appeal, claiming that they demonstrated a triable issue of fact precluding summary judgment.

Because HTL Automotive is not in good standing with the Franchise Tax Board, we dismiss its appeal. We affirm the judgment against HTL Properties.

---

[1]    There is some confusion as to which entities and individuals are parties to this litigation, which entities are parties to this appeal, and which entities and individuals were just part of the relevant transactions. HTL Automotive is identified as an appellant on the notice of appeal and in the opening brief, but the reply brief indicates that "HTL [Automotive] remains suspended and did not take part in this appeal. HTL [Properties] filed the Opening Brief." Hooman Michael Nissani (Nissani) is not a plaintiff or appellant, and Alant Corporation (Alant) is not a defendant or respondent. Electra Media was erroneously sued as Electric Media, Inc. We describe the relationship among these entities and persons (and others) as is relevant to this appeal below.

# FACTUAL BACKGROUND

I. *The relevant parties*

    A. <u>North East Long Beach Advertising Association (NEDA)</u>

    NEDA is an unincorporated association formed in 1998. Three entities (Salta Pacific, LLC, dba Beach Toyota (Salta); Coast Cadillac; and Alant dba Circle Imports Audi and Porsche/Circle Isuzu and Mitsubishi) located in Long Beach formed NEDA to build a large electronic reader board sign adjacent to the freeway to advertise the members' car dealerships (the NEDA sign). The terms of the entities' agreement is set forth in a contract titled Auto Dealers Association and Reader Board Participation Agreement (the NEDA agreement).

    The NEDA agreement was signed by Salta, Coast Cadillac, and Alant. Significantly, Speck executed the NEDA agreement on behalf of Alant, in his capacity as Alant's president.

    As discussed below, when HTL Automotive purchased the Toyota dealership in 2008, it joined NEDA.

    The NEDA sign consists of three parts. The top is a static display of the words "Long Beach." The middle portion is a digital display with rotating graphic images, which at all times has consisted of advertisements for NEDA members' new car dealerships and public service announcements from the City of Long Beach. The bottom portion of the sign contains static advertisements for the NEDA members' new car dealerships.

    B. <u>EMI</u>

    EMI is a full-service sign management company responsible for overseeing the life of an advertising display. It handled all aspects of the construction, permitting, programming, and maintenance of the NEDA sign. NEDA remits payment to

3

EMI on a monthly basis for the expenses of maintaining, programming, and operating the NEDA sign.

    C. <u>Alant</u>

    Alant is the entity that operates under the fictitious business name Circle Imports and owns Circle Audi and Circle Porsche, two new car dealerships located near the "Traffic Circle" area of Long Beach. Speck is Alant's president.

    Alant, not Speck, is a member of NEDA.

    D. <u>Circle Auto</u>

    Among other things, Circle Auto manages the dealerships owned by Alant. It does not own any car dealerships and has never been a member of NEDA. That said, it regularly handles the administrative tasks associated with NEDA, such as collecting payments from members and remitting payment to EMI.

    E. <u>HTL Automotive</u>

    In 2008, HTL Automotive began operating a new car dealership in Long Beach under the fictitious name Hooman Toyota. Nissani was the president of HTL Automotive. In 2016, HTL Automotive sold the dealership to a third party and has not operated a new car dealership in Long Beach since. Until the sale of its dealership, HTL Automotive was a member of NEDA.

    F. <u>HTL Properties</u>

    HTL Properties owns and leases parcels of land in Long Beach. It has never operated a new car dealership in Long Beach.

    HTL Properties is managed by Nissani.

II. *The NEDA agreement*

    As set forth above, Salta, Coast Cadillac, and Alant formed NEDA pursuant to the NEDA agreement. The purpose of the

4

NEDA agreement was to establish NEDA and install an electronic reader board sign to advertise car dealerships in Long Beach. The NEDA sign would be "used for identifying and advertising the Member's Auto Dealerships." "Auto Dealership" is defined as "a Member's facility in the City of Long Beach empowered with the right to sell or lease new Vehicles under a license or franchise granted by a Vehicle manufacturer and the State of California." Notably, the NEDA agreement specifies that "[a]ny and all development and use of the sign shall at all times comply with any and all requirement[s] of the Municipal [C]ode of the City of Long Beach, California."

The NEDA agreement also provides that "membership in the Association held by any Member shall automatically terminate upon the transfer, conveyance, pledge, or alienation of an Auto Dealership by the Member thereof."

III. *Renovations to the NEDA sign*

In 2006, the NEDA sign was relocated approximately 10 feet and assigned a new address. It was increased in size, the words "Long Beach" were added to the top in backlight letters, and the City of Long Beach received 15 percent of the available advertising time for public service messages.

The City of Long Beach loaned NEDA $300,000 for the renovation. The loan was guaranteed by Alant as well as Jentra, LLC dba Beach Toyota, which had become a member of NEDA when it purchased the Toyota dealership from Salta.

IV. *HTL Automotive acquires Beach Toyota*

In 2008, HTL Automotive acquired Beach Toyota from Jentra, LLC, and began doing business as Hooman Toyota. As part of the acquisition, HTL Automotive executed an assumption agreement, which provides, in relevant part: "Seller hereby

5

assigns and Buyer hereby undertakes and agrees from and after the date hereof, to assume and to pay, perform and discharge when due . . . all obligations of Seller arising in connection with the following Assumed Contracts" listed on an attached schedule. The schedule identified the NEDA agreement as well as "Seller's duties and obligations as a member of" NEDA, and "Seller's obligations pursuant to its guaranty of obligations of" NEDA made for the benefit of the City of Long Beach.

Hooman Toyota began advertising on the digital portion of the NEDA sign and used one quarter of the static portion. HTL Automotive made payments for the maintenance of the NEDA sign and repayment of the loan to the City of Long Beach.

V. *HTL Automotive and Alant agree to split the usage and expense of the NEDA sign*

In 2012, Nissani began taking steps to move Hooman Toyota from its location near the "Traffic Circle" to the parcel adjacent to the NEDA sign. While Coast Cadillac had previously occupied that parcel, the dealership had since closed and the property remained vacant.

Because of Coast Cadillac's departure, there were only two remaining members of NEDA: Alant dba Circle Audi/Circle Porsche and HTL Automotive dba Hooman Toyota. Alant owned two-thirds of NEDA and HTL Automotive owned one-third of NEDA.

Speck wanted to maintain Alant's two-thirds majority ownership in NEDA, but he and Nissani began discussing a reallocation of NEDA expenses and advertising time. In June 2012, Nissani and Speck exchanged a series of e-mails, during which (1) Speck proposed that he and Nissani "share the [costs and] the sign [usage] 50/50"; (2) Nissani agreed that he "would

take up to 50% of the sign and expense and you would stay at 50%"; and (3) Speck replied that he and Nissani "would both share the sign 50/50" in usage and expense, "even though [Speck] would have 67% ownership."

Thereafter, the digital advertising costs were split evenly between Speck's and Nissani's dealerships. Circle Auto collected monthly payments for the NEDA sign's expenses from Alant and HTL Automotive and remitted them to EMI.

At around the same time, Nissani arranged with EMI for the purchase and installation of a new panel with the words "HOOMAN TOYOTA OF LONG BEACH" to take up half of the static advertising space on the NEDA sign.

In 2013, Speck and Nissani began exchanging e-mails again, this time arguing over who had what percentage of ownership of the NEDA sign. They exchanged the occasional e-mail on the subject from 2013 to 2016. Despite their e-mail disagreements, the allocation of advertising time remained at 50/50 from 2012 to 2016.

In late 2013, Nissani successfully relocated Hooman Toyota to the parcel adjacent to the NEDA sign.

VI. *After HTL Automotive sells its dealership to an unrelated third party, it claims advertising rights on the NEDA sign*

In 2016, HTL Automotive sold its dealership to an unrelated third party, the Ken Garff Automotive Group (Garff). Thereafter, Speck and Nissani began arguing over whether HTL Automotive had any continuing rights to advertise on the NEDA sign. Specifically, Nissani wrote to Speck: "I have no intention to transfer my ownership to . . . Garff [in] the [NEDA] sign, I have sold them my dealership and did not give [them] or transfer to

7

them any rights to the sign!  [¶]  [A]nd plan using the sign for my new dealership on the property where the sign is."

VII.  *After HTL Automotive sells its dealership, the word "Hooman" is removed from the NEDA sign*

After Nissani sold the Toyota dealership, Toyota demanded that he stop advertising the franchise.  EMI removed the vinyl decals for the word "TOYOTA," leaving "HOOMAN [blank] OF LONG BEACH" on the NEDA sign.

In 2017, the City of Long Beach notified Speck that Nissani no longer operated any dealerships in Long Beach.  Speck, as president of NEDA, directed EMI to remove "HOOMAN [blank] OF LONG BEACH" and "HOOMAN" from the NEDA sign.  EMI complied.

VIII.  *City of Long Beach permits*

There are two types of signs allowed in the City of Long Beach:  "on-premises" and "off-premises."  The NEDA sign is an "on-premises" sign.  Pursuant to Long Beach Municipal Code section 21.44.102, the copy for all on premises signs is limited to identification of the business and products or services available on the premises.  (Long Beach Mun. Code, § 21.44.102.)  This limitation contrasts with a "billboard," defined as any form of "off-premises advertising," electronic or otherwise.  (Long Beach Mun. Code, § 21.54.020.)

Because all signs in the City of Long Beach require permits, in 2006, NEDA applied for and obtained a permit for the renovated NEDA sign.  During the permitting process, the City of Long Beach issued a staff report that outlined the reasons for its approval of the NEDA sign as an "on-premises sign."  Specifically, the report provides:  "In this case, the proposed sign is intended to allow the dealerships to provide signage that is comparable to

8

competing auto dealerships.  These dealers are located inland away from the freeway.  Newer dealerships in neighboring cities have been locating near the freeways, which provide greater visibility and opportunity for on-site advertising.  Auto sale centers in neighboring cities have electronic signs of comparable [size] and height.  The larger sign size will allow all the dealers to [advertise] on one sign.  Staff believes the request will serve to further the goals of the zoning regulations by prompting productivity of local businesses and providing auto dealers with signage that is comparable to that used by competing businesses in adjacent cities."

The permit contained express conditions.  It required that "[a]ll messages shall be limited to on-site advertising of goods or services for" NEDA.  It also required that NEDA maintain an office on the property for business operations, thereby making the NEDA sign an "on-premises" sign.

## PROCEDURAL BACKGROUND

### I. *Complaint*

HTL Automotive and HTL Properties initiated this action on September 27, 2017.  The complaint asserts claims for intentional interference with contractual relations, intentional interference with prospective economic relations, negligent interference with prospective economic relations, breach of contract, and trespass with personal property based upon the following allegations:  In 2012, HTL Automotive entered into an agreement with Speck and Circle Auto to own 50 percent of the NEDA sign.  "Later, [HTL Automotive] assigned its rights to the sign to [HTL Properties]."  Approximately five years later, "Speck and Circle [Auto] intentionally and without cause instructed EMI to remove all advertising associated with [HTL Automotive]

9

and/or [HTL Properties] from the sign. EMI subsequently removed all advertising associated with [HTL Automotive] and/or [HTL Properties] from the sign." As a result, HTL Automotive and HTL Properties claimed over $1 million in damages.

II. *Defendants' motion for summary judgment*

On December 28, 2018, defendants filed a motion for summary judgment. Regarding the breach of contract and interference with contract causes of action, defendants asserted that the claims failed because existence of a valid contract is an essential element of those claims, and "[p]laintiffs' membership was terminated [pursuant to the terms of the NEDA agreement] before the time of the alleged breach." Alternatively, plaintiffs' breach of contract claim failed because they did not contract directly with any defendant.

Defendants also argued that plaintiffs' claims for interference with prospective economic advantage failed. Although not spelled out in the complaint, Nissani's deposition testimony explains the basis of this claim. He testified that it was his understanding that HTL Automotive and HTL Properties would have the ability to lease their alleged advertising rights to any other business, including a non-car dealership located outside of Long Beach. Plaintiffs claimed that they were in discussions with Garff to lease the advertising rights, and Speck and Circle Auto interfered with that prospective economic advantage. According to defendants, plaintiffs had no right to advertise on the sign once they sold the car dealership and only members of NEDA can advertise on the sign. Thus, they had no viable claim for interference with prospective economic advantage.

Finally, plaintiffs' trespass to personal property cause of action failed because they had no right to possession of the NEDA sign.

III. *Plaintiffs' opposition*

HTL Automotive and HTL Properties opposed the motion, arguing that there were three key triable issues of material fact: (1) whether Alant, Speck, and/or Circle Auto ever agreed to be bound by the NEDA agreement; (2) with whom plaintiffs were contracting: Alant, Speck, and/or Circle Auto; and (3) whether Speck is the alter ego of the partnership created by the course of conduct between himself and plaintiffs.

In support, plaintiffs submitted a declaration from Nissani. He averred that "[f]rom 2012 to 2016, [HTL Automotive] and/or [HTL Properties], on the one hand, and Speck and/or Circle [Auto], on the other, entered into multiple agreements regarding the use and ownership of the Sign." Attached to his declaration were copies of various e-mail exchanges between Nissani and Speck purportedly supporting his contention.

Nissani also attested that he "had pre-existing relationships with [Garff] because [HTL Automotive] sold its Toyota dealership to Garff. Garff was not a party [to] any of the contracts between myself and Mr. Speck." "Based on Speck's discussions with Garff, I was unable to lease the Sign rights to Garff."

Finally, Nissani stated: "Prior to the sale of Hooman Toyota to Garff in 2016, I assigned the rights in the ownership and use of the Sign from [HTL Automotive] to [HTL Properties]."

IV. *Trial court order granting summary judgment*

After entertaining oral argument, the trial court granted defendants' motion for summary judgment. In so ruling, it found,

11

inter alia, that plaintiffs' first cause of action for intentional interference with contractual relations and fourth cause of action for breach of contract failed as a matter of law because the NEDA agreement was terminated when plaintiffs sold their only new car dealership in Long Beach. As for plaintiffs' second and third causes of action for interference with prospective economic advantage, those claims failed because plaintiffs could not "demonstrate a reasonable probability that an existing relationship would have yielded economic benefits." Finally, plaintiffs' fifth cause of action for trespass to personal property failed because plaintiffs could not "demonstrate the essential element of a right to possession of the NEDA Sign since they are not members of the NEDA and do not operate a new car dealership in Long Beach."

Judgment was entered in favor of Speck, Circle Auto, and EMI, and against HTL Automotive and HTL Properties.

V. *Appeal*

This timely appeal ensued. The notice of appeal identifies HTL Properties and HTL Automotive as appellants.

## DISCUSSION

I. *Dismissal of HTL Automotive's appeal*

In the respondents' brief, defendants argue that HTL Automotive's appeal must be dismissed because it is not in good standing with the Franchise Tax Board. The reply brief concedes that HTL Automotive is suspended and claims that it did not take part in this appeal. But, HTL Automotive is named as an appellant on the notice of appeal. And, the opening brief repeatedly refers to "Appellants," sometimes including HTL Automotive in that ambiguous grouping. To resolve this confusion, we liberally construe the notice of appeal to include

12

HTL Automotive, a party aggrieved by the judgment entered against it, as an appellant. (*Apple, Inc. v. Franchise Tax Bd.* (2011) 199 Cal.App.4th 1, 13.) Because HTL Automotive is not in good standing with the Franchise Tax Board, its appeal is dismissed.[2] (*Grell v. Laci Le Beau Corp.* (1999) 73 Cal.App.4th 1300, 1306.)

II. *Standard of review*

"We review a grant of summary judgment de novo, considering "'all of the evidence set forth in the [supporting and opposition] papers, except that to which objections have been made and sustained by the court, and all [uncontradicted] inferences reasonably deducible from the evidence.'" [Citation.] 'In independently reviewing a motion for summary judgment, we apply the same three-step analysis used by the superior court. We identify the issues framed by the pleadings, determine whether the moving party has negated the opponent's claims, and determine whether the opposition has demonstrated the existence of a triable, material factual issue.' [Citation.]" (*Granadino v. Wells Fargo Bank* (2015) 236 Cal.App.4th 411, 415.)

"The general rule is that summary judgment is appropriate where 'all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . . .' [Citation.] A defendant 'moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of

---

[2] Because we are dismissing HTL Automotive's appeal, we do not address any arguments by the parties concerning HTL Automotive.

any triable issue of material fact.' [Citation.] The moving defendant may meet this burden either by showing that one or more elements of a cause of action cannot be established or by showing that there is a complete defense thereto. [Citations.] "'[A]ll that the defendant need do is to show that the plaintiff cannot establish at least one element of the cause of action . . . [;] the defendant need not himself conclusively negate any such element . . . ." [Citation.]' [Citation.] Once the moving party's burden is met, the burden shifts to the plaintiff to demonstrate the existence of a triable issue of material fact. [Citation.] The plaintiff must produce "'substantial'" responsive evidence sufficient to establish a triable issue of fact. [Citation.] '[R]esponsive evidence that gives rise to no more than mere speculation cannot be regarded as substantial, and is insufficient to establish a triable issue of material fact.' [Citation.]" (*Granadino v. Wells Fargo Bank, N.A.*, *supra*, 236 Cal.App.4th at p. 415.)

In reviewing an order granting summary judgment, we strictly scrutinize the moving party's papers (*Chevron U.S.A., Inc. v. Superior Court* (1992) 4 Cal.App.4th 544, 549, overruled in part on other grounds by *Camargo v. Tjaarda Dairy* (2001) 25 Cal.4th 1235, 1245), and liberally construe the declarations of the party opposing summary judgment to determine the existence of triable issues of fact. (*Sosinsky v. Grant* (1992) 6 Cal.App.4th 1548, 1556.) All doubts as to whether any material, triable issues of fact exist are to be resolved in favor of the party opposing summary judgment. (*Ibid.*)

We affirm an order granting summary judgment if it was correct on any ground that the parties had an adequate opportunity to address in the trial court. (*Securitas Security*

14

*Services USA, Inc. v. Superior Court* (2011) 197 Cal.App.4th 115, 120.)

III. *The trial court properly granted respondents' motion for summary judgment*

    A. <u>Breach of contract</u>

The elements of a claim for breach of contract are (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damages. (*San Mateo Union High School Dist. v. County of San Mateo* (2013) 213 Cal.App.4th 418, 439.) "'Under California law, a contract will be enforced if it is sufficiently definite (and this is a question of law) for the court to ascertain the parties' obligations and to determine whether those obligations have been performed or breached.' [Citation.]" (*Bustamante v. Intuit, Inc.* (2006) 141 Cal.App.4th 199, 209.) "It is essential to the validity of a contract, not only that the parties should exist, but that it should be possible to identify them." (Cal. Civ. Code, § 1558.)

HTL Properties did not raise a triable issue of fact to preclude summary adjudication of this cause of action. It never set forth the terms of the parties' alleged agreement. All Nissani asserted in his declaration in opposition to defendants' motion for summary judgment was that "[f]rom 2012 to 2016, [HTL Automotive] and/or [HTL Properties], on the one hand, and Speck and/or Circle [Auto], on the other, entered into multiple agreements regarding the use and ownership of the Sign." It is unclear whether there was one contract or more than one contract. What are the terms of the alleged contract(s)? Who are the parties to the alleged contract(s)? Absent these basic terms, HTL Properties's breach of contract claim fails.

15

In addition, as set forth above, Speck and/or Circle Auto could not have entered into any agreements regarding the use and ownership of the NEDA sign because the NEDA sign is owned by NEDA. And neither Speck nor Circle Auto are members of NEDA.

On appeal, HTL Properties asserts that "Respondent made multiple agreements regarding the ownership and usage of the NEDA Sign and Respondent breached said agreements." HTL Properties's use of the generic term "Respondent" when there are three respondents in this action makes it difficult to discern HTL Properties's argument.

Presumably, in this context, "Respondent" refers to Speck, and HTL Properties's theory seems to be that either it or Nissani entered into agreements with Speck as evidenced by the e-mail exchanges between Speck and Nissani. Even if we were to accept HTL Properties's premise that it somehow entered into multiple contracts regarding the use of the NEDA sign with Speck, HTL Properties's argument still fails. As set forth above, Speck did not own the NEDA sign; NEDA owns the sign.[3] And NEDA's use of the sign is dictated by the terms of the permit issued by the City of Long Beach. Speck could not alter those terms.

_____

[3]    HTL Properties contends that "Speck revealed [Circle Auto] was assigned the ownership and usage rights to the Sign when Speck confirmed that [Circle Auto] [w]as the actual 100% owner of [the] Sign, not Alant." HTL Properties misrepresents the evidence. As pointed out by respondents, Speck misspoke when he used the phrase "Circle Auto" as opposed to "Circle Porsche Audi [Alant]." He explained this error during his deposition. It is unreasonable to infer that this one errant comment creates a triable issue of fact concerning ownership of the NEDA sign. (*Hirsch v. Blish* (1977) 76 Cal.App.3d 163, 166.)

16

The fact that Nissani and Speck used the word "I" in those e-mails does not change our analysis. If the individuals used the word "I" to indicate that they were negotiating in their individual capacities, then the proper plaintiff in this litigation would be Nissani. But, as noted above, he was not named as a plaintiff in the complaint; Speck did not obtain a judgment against Nissani; and Nissani is not an appellant.

To the extent HTL Properties's claim may be based upon the NEDA agreement, it fails for the simple reason neither HTL Properties nor respondents are parties to the NEDA agreement. While Speck signed the NEDA agreement, he did so in his capacity as president of Alant.

Urging us to reverse, HTL Properties argues that there is a triable issue of fact as to whether "Respondent" signed the NEDA agreement, and therefore whether this "Respondent" is a party to the NEDA agreement who could terminate "Appellant's membership interest" in the NEDA agreement. This argument makes no sense. HTL Properties, the appellant in this case, was not a party to the NEDA agreement. Therefore, no respondent could have terminated its membership interest in the NEDA agreement.

Furthermore, as set forth above, the respondents in this litigation include Speck, Circle Auto, and EMI, who, as they readily admit, were not parties to the NEDA agreement. Thus, they cannot be liable for breach of the NEDA agreement.

Assuming respondents are correct that HTL Properties uses the ambiguous term "Respondent" here to refer to "Alant," HTL Properties's claim still fails. First, HTL Properties does not have a contract with Alant and HTL Properties was never a member of NEDA. Second, Alant was not a named defendant in

17

the complaint, Alant did not move for summary judgment, and Alant did not obtain a judgment against HTL Properties. Thus, any argument concerning Alant and whether it was a proper party to the NEDA agreement is irrelevant and offers no basis for reversal.

HTL Properties further argues that there is a triable issue of fact as to whether NEDA is a general partnership. Assuming, without deciding, that NEDA was a partnership, HTL Properties still offers no grounds for reversal. There is no evidence or argument that HTL Properties was an alleged "partner" in NEDA and how that status would somehow give rise to a breach of contract cause of action.

Relying upon Speck and Nissani's 2012 e-mails, HTL Properties seems to suggest that these individuals somehow were partners. The fact that Speck and Nissani's 2012 e-mails confirm "50/50" usage and expenses for the NEDA sign does not create a triable issue of fact as to whether Speck and Nissani were members in NEDA as an alleged partnership. There is no evidence that Speck and/or Nissani were communicating in their individual capacities, as opposed to their representative capacities on behalf of the entities (HTL Automotive and Alant) that were members of NEDA. And even if they did somehow transform into partners, HTL Properties fails to explain how that relationship would give it a claim for breach of contract.

B. Interference causes of action

The elements of a cause of action for intentional interference with contractual relations are (1) a valid contract between the plaintiff and a third party, (2) the defendant's knowledge of this contract, (3) the defendant's intentional acts

18

designed to induce a breach or disruption of the contractual relationship, (4) actual breach or disruption of the contractual relationship, and (5) resulting damages. (*Ixchel Pharma, LLC v. Biogen, Inc.* (2020) 9 Cal.5th 1130, 1141.)

The elements of a cause of action for intentional inference with prospective economic advantage are similar: "'"(1) [A]n economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." [Citations.]' [Citation.]" (*LiMandri v. Judkins* (1997) 52 Cal.App.4th 326, 339.) In addition, "a plaintiff seeking to recover for an alleged interference with prospective contractual or economic relations must plead and prove as part of its case-in-chief that the defendant not only knowingly interfered with the plaintiff's expectancy, but engaged in conduct that was wrongful by some legal measure other than the fact of interference itself." (*Della Penna v. Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal.4th 376, 393.)

HTL Properties's claims of interference fail because it did not have a right to lease any advertising rights. HTL Properties was never a member of NEDA. Nor could it have been because the NEDA agreement specifies that only car dealerships can be members of NEDA. To the extent HTL Properties's claim is somehow based upon its relationship with HTL Automotive, its claim still fails because, as set forth in the NEDA agreement, when a car dealership is sold, the seller's membership in NEDA

automatically terminates.  Thus, HTL Properties had nothing to lease to Garff.

C.  <u>Trespass to personal property</u>

"Trespass to chattel 'lies where an intentional interference with the possession of personal property has proximately caused injury.' [Citation.]" (*Levy v. Only Cremations for Pets, Inc.* (2020) 57 Cal.App.5th 203, 216.)

At the risk of sounding redundant, HTL Properties's claim fails because the NEDA sign is and was not its personal property; it had no right to the NEDA sign.  Thus, it cannot prosecute this claim.

D.  <u>Claims against EMI</u>

The opening brief fails to argue why the judgment against EMI must be reversed.  As such, HTL Properties has waived any arguments concerning EMI.  (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.)

E.  <u>Propriety of order granting summary judgment</u>

For the first time in the reply brief, and almost in passing, HTL Properties argues that the order granting summary judgment was defective because it failed to comply with Code of Civil Procedure section 437c, subdivision (g).  Aside from the fact that this argument was not raised below (*Algeri v. Tonini* (1958) 159 Cal.App.2d 828, 832), it is well-settled that we do not consider arguments first raised in a reply brief.  (*Prang v. Los Angeles County Assessment Appeals Bd. No. 2* (2020) 54 Cal.App.5th 1, 17.)

20

## DISPOSITION

HTL Automotive's appeal is dismissed.  The judgment against HTL Properties is affirmed.  Respondents are entitled to costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
ASHMANN-GERST


We concur:


_____, P. J.
LUI


_____, J.
HOFFSTADT